THE ATLANTIC STATE BANK OF THE CITY OF BROOKLYN, Respondent, *v.* WILLIAM SAVERY et al., Appellants.

The firm of C. F. P. & Co. made their promissory note payable to their order and indorsed the same. L., one of the firm and also a member of the firm of J. S.'s Sons, indorsed his own name and the name of the latter firm thereon without their knowledge or consent, and delivered it to a firm to whom he was individually indebted to be applied upon the debt, who transferred the note to plaintiffs for value, before maturity, plaintiff having no notice of the circumstances attending the execution of the note. In an action against the members of the firm of J. S.'s Sons upon the indorsement, *held,* that the defendants were liable.

One of the firm to whom L. transferred the note was one of the directors of the plaintiff. *Held,* that it was not thereby made chargeable with, or affected by, his knowledge of the transaction; that the knowledge acquired by him, not as an officer of the plaintiff or while engaged in its business, but in an individual capacity could not operate to its prejudice, nor was there any presumption that he communicated it to plaintiff.

The purchase of a promissory note for a sum less than its face is a discount thereof within the meaning of the provision of the banking act of this State (§ 18, chap. 260, Laws of 1838), which authorizes associations organized under it to discount bills, notes, etc.

*Niagara Co. Bank* v. *Baker* (15 Ohio St. 68), *F. & M. Bank* v. *Baldwin* (23 Minn.), distinguished.

Plaintiff was organized under said act. The note in question was purchased by it at a greater discount than lawful interest. *Held,* that this did not

invalidate its title; that if any penalty was incurred thereby (as to which *quære*), it was only the penalty prescribed by the act (see amendment, chap. 193, Laws of 1870); that this was not available as a defense as it was not set up in the answer.

*It seems* that it would not have availed if it had been pleaded.

Also, *held*, that the violation of the statute was not a fact affecting the good faith of plaintiff as holder of the paper.

Also, *held*, that if the purchase of the note was beyond the scope of plaintiff's powers as defined by the act under which it was organized, it would not avail defendants.

(Argued September 22, 1880; decided October 12, 1880.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, in favor of plaintiff, entered upon an order overruling defendants' exceptions and directing judgment on a verdict. (Reported below, 18 Hun, 36.)

The nature of the action and the facts are set forth sufficiently in the opinion.

*John A. Mapes* for appellants. The presumed authority of an individual partner to bind his firm by obligations issued in its name is confined to matters within the general scope of its business and apparently for its benefit, or on its account. (*Livingston* v. *Roosevelt*, 4 Johns. 251.; *Dubois* v. *Livingston*, id. 261, *n.*; *Gansevoort* v. *Williams*, 14 Wend. 133; *Livingston* v. *Hastie*, 2 Cai. 246, *Elliot* v. *Dudley*, 19 Barb. 326; Chitty on Bills, 29, 33; Edwards on Bills and Notes, 103, marg. p.; Parsons on Part. [3d ed.] *216.) Where a firm name is affixed to commercial paper or other written obligation as surety, and that fact appears on the paper, or is known to the party receiving the obligation, there is no implied authority in the signing partner to make such use of the firm name, and the non-signing partners cannot be held without affirmative proof of their assent. (*Foot* v. *Sabin*, 19 Johns. 154; *Boyd* v. *Plumb*, 7 Wend. 309; *Andrews* v. *Planters' Bk.*, 7 S. & M. 192; *Rollins* v. *Stevens*, 32 Me. 454; *Seldon* v. *Bk. of Commerce*, 3 Minn. 166; *Laverty* v. *Burr*, 1 Wend. 529; *Bk. of Rochester* v. *Bowen*, 7 id. 158; *Stall* v. *Catskill*

*Bk.*, 18 id. 466; *Williams* v. *Walbridge*, 3 id. 415; *N. Y. F. Ins. Co.* v. *Bennett*, 5 Conn. 574; *Gansevoort* v. *Williams*, 14 Wend. 139; *Joyce* v. *Williams*, id. 141; Parsons on Bills and Notes, 140, 141; Story on Part., § 127; Parsons on Part. [3d ed.] *216; Collyer on Part., § 421; Daniels on Neg. Inst. 272, § 365; Edwards on Bills and Notes, 103; 1 Am. Lead. Cas. 455.) The possession and presentation for discount or sale of a note or other commercial paper, by one who is liable thereon, as drawer, maker, acceptor or indorser, is in itself notice to the party taking it from him, that all indorsements subsequent to his are for accommodation. (*Stall* v. *Catskill Bk.*, 18 Wend. 466; *Bk. of Vergennes* v. *Cameron*, 7 Barb. 143; *Fielden* v. *Lahens*, 2 Abb. Ct. App. Dec. 111; *N. Y. F. Ins. Co.* v. *Bennett*, 5 Conn. 574; *Bk. of Tennessee* v. *Safferins*, 3 Humph. 597; *Tanner* v. *Hall*, 1 Penn. St. 417; *Mauldin* v. *Br. Bk. of Mobile*, 2 Ala. [N. S.] 513; *Tompkins* v. *Woodyard*, 5 W. Va. 216; Daniels on Neg. Inst., § 365; *Wallace* v. *Br. Bk. of Mobile*, 1 Ala. [N. S.] 565; *Saltmarsh* v. *Planters' Bk.*, 14 id. 668; *Carlisle* v. *Hill*, 16 id. 405; *Overton* v. *Harden*, 6 Cold. [Tenn.] 376; *Brown* v. *Taber*, 5 Wend. 566; *Hendrie* v. *Berkowitz*, 37 Cal. 113; *Le Moine* v. *Bk. of No. America*, 3 Dillon, 44; *Howe M. Co.* v. *Hadden*, 6 Reporter, 136; *Palmer* v. *Whitney*, 21 Ind. 58; *Comstock* v. *Hier*, 73 N. Y. 279; *Cent. Bk. of Brooklyn* v. *Hammett*, 50 id. 158.) Leonard, Sheldon & Co. having parted with no value for the note, but taking it on account of an antecedent indebtedness, for that reason also, were not entitled to protection as *bona fide* holders. (*Comstock* v. *Hier*, 73 N. Y. 269.) The plaintiff is not a *bona fide* holder of the note in suit, for the reason that it did not become the holder thereof in any manner authorized by the organic act to which it owes its existence, and from which its corporate powers are derived. (2 R. S. [Banks' 6th ed.] 334, § 199; *First Nat. Bk.* v. *Ocean Bk.*, 60 N. Y. 288; *People* v. *Utica Ins. Co.*, 15 Johns. 383; *F. Ins. Co.* v. *Ely*, 2 Cow. 673, 710; *American Life Ins. Co.* v. *Dobbin*, Lalor's Sup. to Hill & Denio, 255, 256; *New York Tr. & L. Co.* v.

*Helmer*, 19 S. C. 35 ; 77 N. Y. 64 ; *F. & M. Bank* v. *Baldwin*, 23 Me. 198 ; *Niagara Co. Bank* v. *Baker*, 15 Ohio St. 68 ; *Dunkle* v. *Renwick*, 6 id. 534, 535 ; *Nat. Union Bank* v. *Lazaer*, 7 Wash. L. R. 513 ; Morse on Banking, 20 ; *Bank* v. *Lanier*, 11 Wall. 374 ; *Crocker* v. *Whitney*, 71 N. Y. 167 ; *Talmage* v. *Pell*, 3 Seld. 340 ; *Curtis* v. *Leavitt*, 15 id. 133 ; *First Nat. Bank* v. *Pierson*, 16 Alb. Law Jour. 319.) No action can be maintained by a corporation upon securities taken in violation of their organic act. As to such securities the corporation has no available title. (*De Witt* v. *Brisbane*, 16 N. Y. 508 ; *Seneca Co. Bank* v. *Lamb*, 26 Barb. 598 ; *Bank of U. S.* v. *Owens*, 2 Peters, 257 ; *Utica Ins. Co.* v. *Scott*, 19 Johns. 1 ; *Talmage* v. *Pell*, 3 Seld. 328 ; *Ins. Co.* v. *Lawrence*, 3 Wend. 482 ; *Life Ins. Co.* v. *Fire Ins. Co.*, 7 id. 35 ; *Ex parte Dysler*, 2 Rose, 351 ; *Watts* v. *Brooks*, 3 Ves. Jr. 612 ; *Johnson* v. *Bush*, 3 Barb. Ch. 207 ; *Swift* v. *Beers*, 3 Denio, 70 ; *N. Y. L. & T. Co.* v. *Helmer*, 19 S. C. 35 ; 77 N. Y. 64 ; *Crocker* v. *Whitney*, 71 id. 161 ; *Wood* v. *People's Bank*, 73 Penn. St. 57 ; *Fowler* v. *Scully*, 72 id. 456 ; *Kansas Valley Bank* v. *Rowel*, 2 Dillon, 371.) If the act by which one becomes the holder was unauthorized or illegal, he is not a *bona fide* holder as against the defrauded parties, whatever may be his rights as to the other parties to the notes. (*Bank of U. S.* v. *Davis*, 2 Hill, 460, 461 ; *First Nat. Bank* v. *First Nat. Exch. Bank*, 92 U. S. 122 ; *Johnson* v. *Nat. Bank Gloversville*, 74 N. Y. 329.) Plaintiff stands chargeable with the same notice of the character of the indorsement, which Mr. Leonard had. (*Bank of U. S.* v. *Davis*, 2 Hill, 451 ; *North River Bank* v. *Aymar*, 3 id. 274 ; *Nat. Security Bank* v. *Cushman*, 121 Mass. 490 ; *Verona. C. Cheese Co.* v. *Murtagh*, 50 N. Y. 316.) The facts sufficiently indicated that Law was in some manner using the firm name for his individual benefit, and plaintiff could not safely disregard the notice thus given. (*Tanner* v. *Hall*, 1 Penn. St. 417 ; *Cooper* v. *McGlenkin*, 22 id. 80 ; *Ex parte Darlington* v. *Stockton Banking Co.*, 4 De Gex, J. & S. 581 ; *Tompkins* v. *Woodyard*, 5 W. Va. 216 ; *West St. L. Sav. Bank* v. *Parmalee*, 5 Rep. 3.) The pur-

chaser of commercial paper is chargeable with knowledge of what appears upon its face. (*Angle* v. *N. Y. Mut. L. Ins. Co.*, 2 Otto, 341; *Phelps* v. *Visscher*, 50 N. Y. 74; *Collins* v. *Gilbert*, 4 Otto, 754.) Defendants had the right to have submitted to the jury the question whether or not Mr. Leonard did not participate as director in the purchase of the note by the bank. (*National Security Bank* v. *Cushman*, 121 Mass. 490.)

*Wm. B. Hornblower* for respondent. The mere fact that a director of a corporation has knowledge of a fact does not charge the corporation with notice. (*Nat. Bank* v. *Norton*, 1 Hill, 572; *Fulton Bk.* v. *N. Y. & Sharon C. Co.*, 4 Paige, 127; *Miller* v. *Ill. Cent. R. R. Co.*, 24 Barb. 312; *Prest., etc., Westfield Bk.* v. *Cornen*, 37 N. Y. 320; *Farrell Foundry* v. *Dart*, 26 Conn. 376; *Genl. Ins. Co.* v. *U. S. Ins. Co.*, 10 Md. 517; *First Nat. Bk.* v. *Christopher*, 11 Vroom [N. J.], 435.) Even though the director is called upon to act and does act in his official capacity as a member of the board with reference to the matter, unless such knowledge was acquired officially, or in the course of business as director, or for the purpose of being communicated to the board; the corporation is not chargeable with notice. (*Nat. Bk.* v. *Norton*, 1 Hill, 572; *Terrell* v. *Br. Bk., Mobile*, 12 Ala. 502; *U. S. Ins. Co.* v. *Shriver*, 3 Md. Ch. 381; *Custer* v. *Tompkins Co. Bk.*, 9 Barr. [Penn.] 27; *Prest., etc., Westfield Bk.* v. *Cornen*, 37 N. Y. 320; *Wells* v. *Am. Ex. Co.*, 44 Wis. 342; *Platt* v. *Birmingham Axle Co.*, 41 Conn. 255.) The fact, that the person with notice of whose fraudulent acts the corporation is sought to be charged is himself a director in the corporation, does not make the corporation chargeable with notice. (*Fulton Bk.* v. *N. Y. Sharon C. Co.*, 4 Paige, 127; *Seneca Co. Bk.* v. *Neass*, 5 Denio, 329; *Prest., etc., City Bk.* v. *Barnard*, 1 Hall, 70; *Prest., etc., Westfield Bk.* v. *Cornen*, 37 N. Y. 320; *Commercial Bk.* v. *Cunningham*, 24 Pick. 270; *Washington Bk.* v. *Lincoln*, 22 id. 24; *Custer* v. *Tompkins Co. Bk.*, 9 Barr. [Penn.] 27.) When a director or other officer enters into

contract relations with the corporation, as by procuring a note to be discounted for his own benefit, he *pro hac vice* ceases to be an agent of the corporation, and the corporation is not chargeable with his knowledge. (*Seneca Co. Bk.* v. *Neass*, 5 Den. 329; 3 N. Y. 442; *Lucas* v. *Bk. of Darien*, 2 Stew. [Ala.] 280, 295; *Terrell* v. *Br. Bk., Mobile*, 12 Ala. 502; *Farmers and Citizens' Bk.* v. *Payne*, 25 Conn. 444; *Winchester* v. *Balt. & Sus. R. R. Co.*, 4 Md. 231; *Barnes* v. *Trenton G. L. Co.*, 12 C. E. Greene [N. J. Ch.], 33; *First Nat. Bk. Davenport* v. *Gifford*, 47 Iowa, 575; *Wickersham* v. *Chicago Zinc Co.*, 18 Kans. 481; *In re European Bk.*, L. R., 5 Ct. App. 358, 361; *In re Marseilles Ex. R. W. Co.*, L. R., 7 id. 161.) Nothing short of bad faith is sufficient to deprive a purchaser for value of commercial paper of his right to claim as a *bona fide* holder. Even gross negligence is not enough to deprive him of that right. (*Seybel* v. *Nat. Currency Bk.*, 54 N. Y. 288; *Brown* v. *Spofford*, 95 U. S. 478; *Murray* v. *Lardner*, 2 Wall. 121; 1 Daniel on Neg. Instr., §§ 775, 776; *Bush* v. *Crawford*, 9 Phila. 392.) The form of the note and the indorsements upon it were not notice to the bank, or even ground for suspicion or inquiry. (Parsons on Part. *202, note *c;* *Ihmsen* v. *Negley*, 25 Penn. St. 297; *Haldeman* v. *Bk., Middletown*, 28 id. 440; *Smith* v. *Lusher*, 5 Cow. 688; *Smyth* v. *Strader*, 4 How. [U. S.] 404; *Babcock* v. *Stone*, 3 McL. 172; *Wait* v. *Thayer*, 118 Mass. 473; *At. Nat. Bk.* v. *Savery*, 127 id. 80.) The powers of an association organized under the banking act of 1838 are not to be strictly construed. (*Curtis* v. *Leavitt*, 15 N. Y. 60.) An association organized under the general banking act of 1838 has all the powers incident to a banking business, even though not specifically and in express terms conferred by the act. (*Curtis* v. *Leavitt*, 15 N. Y. 9; *Leavitt* v. *Blatchford*, 17 id. 522; *Barnes* v. *Ontario Bank*, 19 id. 152; Green's Brice's Ultra Vires [2d ed.], 65; *Yerkes* v. *Nat. Bank, Port Jervis*, 69 N. Y. 382; *Leach* v. *Hale*, 30 Iowa, 69; *Van Leuven* v. *First Nat. Bank*, 54 N. Y. 671; *People* v. *Metropolitan Bank*, 7 How. Pr. 144; *First Nat. Bank, Carlisle*, v. *Graham*, 21 Alb.

Law Jour. 311.)   The dealing in commercial paper by pur-
chase is a usual incident to the business of banking. (*Yerkes* v.
*Nat. Bank Port Jervis*, 69 N. Y. 382.)   A note purchased
by ᴀ bank before maturity, at a discount from its face value, is
discounted within the proper meaning of that term.   (Burrill's
Law Dic., "Discount;" *Tracy* v. *Talmage*, 18 Barb. 456, 462;
*Pape* v. *Capital Bank, Topeka*, 20 Kans. 457; *People* v. *Metro-
politan Bank*, 7 How. Pr. 144; *Fleckner* v. *U. S. Bank*, 8
Wheat. 349–353; *Bank of United States* v. *Waggoner*, 9 Peters,
378; 18 Hun, 41.)   A bank can purchase negotiable paper.
(*Tracy* v. *Talmage*, 18 Barb. 456; *Mechanics' Bank, Williams-
burgh*, v. *Foster*, 44 id. 87, 90; *First National Bank* v.
*Harris*, 118 Mass. 516; *Pape* v. *Capital Bank, Topeka*, 20
Kans. 440, 446, 451; *Smith* v. *Exchange Bank, Pittsburgh*, 26
Ohio St. 141; *Nat. Pemberton Bank* v. *Porter*, 125 Mass. 333;
*At. Nat. Bank* v. *Savery*, 127 Mass. 75; *Fleckner* v. *United
States Bank*, 9 Wheat. 349, 353; *Bank of United States* v.
*Waggoner*, 9 Peters, 378.)   Even if the purchase of the note
was *ultra vires*, that furnishes no defense to the parties whose
names are on the paper. (*Whitney Arms Co.* v. *Bailou*, 63
N. Y. 62, 68, 69; *Mott* v. *U. S. Trust Co.*, 18 Barb. 568;
*Un. Nat. Bank* v. *Matthews*, 98 U. S. 621; *Gold Mining Co.*
v. *Nat. Bank*, 96 id. 640; *Nat. Pem. Bank* v. *Porter*, 125
Mass. 333; *Little* v. *O'Brien*, 9 Mass. 423; *Chester Glass Co.*
v. *Dewey*, 16 Mass. 94; *Oneida Bank* v. *Ontario Bank*, 21
N. Y. 490; *Silver Lake Bank* v. *North*, 4 Johns. Ch. 370;
*Indiana* v. *Woram*, 6 Hill, 37.)   The defense of *ultra vires*
can only be taken on behalf of the stockholders or of the State.
(*Railway Co.* v. *McCarthy*, 96 U. S. 258; *Hitchcock* v. *Galves-
ton*, 96 U. S. 351; *Gold Mining Co.* v. *Nat. Bank*, 96 U. S.
640; *Bissell* v. *M. S. & N. I. R. R. Co.*, 22 N. Y. 262;
*Parish* v. *Wheeler*, 22 id. 494; *Buffett* v. *Troy & B. R. R.
Co.*, 40 id. 168; *Hurd* v. *Green*, 17 Hun, 334; *Stewart* v. *Nat.
Bank*, 2 Abb. [N. S.] 424; *Rutland & B. R. R. Co.* v. *Proc-
tor*, 29 Vt. 93, 96; *Sturges* v. *Knapp*, 31 id. 2; *Bly* v. *Second
Nat. Bank*, 79 Penn. St. 453; *Grant* v. *Henry Clay Coal Co.*,
80 id. 208; *Bank* v. *Hammond*, 1 Rich. Law, 281.)   The de-

fendants are estopped from denying, for any purpose, the busi-ness character of this paper, as against any purchaser for value and in good faith. (*Clark* v. *Sisson,* 22 N. Y. 312, 316 ; *Wilkie* v. *Roosevelt,* 3 Johns. Cas. 66, 68 ; *Jones* v. *Hake,* 2 id. 60.) The acquiescence of the directors in the payment of the pur-chase-price of the note is a ratification of the purchase, and ratification by the officers of a corporation makes an act as valid as if originally authorized by them. (*Curtis* v. *Leavitt,* 15 N. Y. 48, 137, 178 ; *Barnes* v. *Ontario Bank,* 19 id. 152 ; *Palmer* v. *Yates,* 3 Sandf. 137 ; *Leavitt* v. *Yates,* 4 Edw. Ch. 134 ; *Olcott* v. *Tioga R. R. Co.,* 27 N. Y. 558 ; *N. H. & Del. Bridge Co.* v. *Phœnix Bank,* 3 id. 156 ; *Bank of United States* v. *Dandridge,* 12 Wheat. 64 ; *Fishmongers' Co.* v. *Robertson,* 5 Man. & Gr. 131.) The bringing of this suit upon the note is a ratification of the purchase. (*Fishmongers' Co.* v. *Robertson,* 5 Man. & Gr. 131 ; *Bank of United States* v. *Dandridge,* 12 Wheat. 64 ; *City of Buffalo* v. *Bettinger,* 76 N. Y. 393.) A State bank can recover a loan even though it exacts more than seven per cent discount. It forfeits only the interest. (Laws of 1870, chap. 163 ; *Hintermeister* v. *First Nat. Bank,* 64 N. Y. 612.) The defense of usury must be specially pleaded, or it is considered waived. (*Nat. Bank, Auburn,* v. *Lewis,* 10 Hun, 468 ; *Manning* v. *Tyler,* 21 N. Y. 567.)

DANFORTH, J. The plaintiff is a banking association created under the act of the legislature of this State entitled "An act to authorize the business of banking," passed April 18, 1838, and as such brings this action upon a promissory note of $3,000, made by the firm of Charles F. Parker & Co., of Boston, Massachusetts, payable to their own order, indorsed by them and by Alexander Law, individually, and also purport-ing to be indorsed by "John Savery's Sons." The defendants composed that firm and carried on business as manufacturers and traders in the city of New York. They are sued as in-dorsers. The complaint contains the allegations usual in such cases. Law does not defend, but the other members of the

firm answer, and among other things deny that they indorsed the note in their firm name, or otherwise, or that they ever delivered it to any person, and aver that the defendant Law was a member of both firms; that the firm of Charles Parker & Co. made and indorsed the note, and placed it in the hands of Law for the purpose of raising money thereon for the sole benefit of the makers or of Law, or both of them; that Law fraudulently indorsed the same in the name of said firm of "John Savery's Sons" as an additional security for the name of the makers, and for his own name as indorser thereon, "and thereupon negotiated the same for the benefit of himself individually, and of said makers of said note;" that this was without the knowledge or consent of the answering defendants or either of them, or in any manner for the benefit of the firm of "John Savery's Sons." They also allege that the plaintiff took the note "with full notice and knowledge of all these matters, and without value paid therefor;" and further, that Leonard, Sheldon & Co., to whom Law delivered the note, are still the actual owners thereof, and that this action is prosecuted for their benefit. Upon the trial the allegations in regard to the manner of making, indorsing and negotiating the note by Law, and the ignorance of defendants were fully established. It also satisfactorily appeared that Law transferred the note to Leonard, Sheldon & Co., a firm of brokers, with whom he had private dealings as an individual and to whom he was indebted in a sum exceeding the amount of the note, with directions to sell it and apply the proceeds upon that indebtedness. This was done. It is thus apparent that neither Law, nor Leonard, Sheldon & Co., could have maintained an action against the defendants on the indorsement of "John Savery's Sons," for as to them the case would be within the well-established doctrine that one partner cannot bind the firm by negotiable paper made by him in its name, and applied to discharge his pre-existing indebtedness, without the assent of the other partners, and this would be so, even if the creditor had no knowledge that the paper was so made, but in this case Leonard, Sheldon & Co., although they did not know that Law had himself written the name of the

firm, had actual notice that he was using the firm name, and therefore its credit, in a matter having no relation to the partnership, and so they could not claim to have taken it even in good faith. (*Comstock* v. *Hier*, 73 N. Y. 269.) The indorsement, however, was not void, but only voidable, for it was made by Law within the general scope of his authority as a member of the firm, and each partner was presumptively liable for its payment. And as it also appeared that the note thus indorsed was afterward, and before maturity, transferred and delivered by Leonard, Sheldon & Co. to the plaintiff, represented by Mr. Puffer, its president, who in its name and for its benefit took the note for value, and without notice of any of the circumstances impairing its validity or affecting the apparent obligation of the indorsers, the rule above referred to does not apply. But on the contrary, the plaintiff has the benefit of another rule, that a holder coming fairly by such negotiable paper has nothing to do with the transactions between the original parties, but may hold it even against the true owner and have a right of action against all the parties to it. He takes it by delivery, and possession proves property. This was considered well settled before Lord MANSFIELD's time (*Peacock* v. *Rhodes*, 2 Doug. 633), and has not since been doubted. Therefore, as the defendant failed to establish the defense which rests on actual notice to the plaintiff, of matters affecting the title of Leonard, Sheldon & Co. to show that the note was transferred by them without consideration, the plaintiff can enforce the same by action, unless in the manner of acquiring it the law of its being was transgressed, or by reason of its nature it is to have imputed to it the knowledge possessed by its transferrors. Both of these things are insisted upon by the learned counsel for the appellants, and his contention rests on the following facts:

It was shown that Mr. Puffer, the president, was in the habit of going every day to various offices in New York, and among others to that of Leonard, Sheldon & Co., " looking for paper ; " at that place " they said to him they had a good piece of paper, and if he wanted it he could have it." After examining it,

and the "mercantile book to see if it was all right," "he made a bargain for it, bought it, and paid for it," receiving at the time a paper from the brokers in these words:

> "NEW YORK, *April* 4, 1877.
> Sold to Atlantic State Bank, by Leonard, Sheldon & Co., note C. F. Parker & Co., due June
> 30 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $3,000 00
> Indorsed A. Law and Jno. Savery's Sons.
> 87 days at 9 per cent . . . . . . . . . . . . . . . . . . . . . .    65 25
>
>     $2,934 75 "

He directed Leonard, Sheldon & Co. to draw upon the bank for this balance, and on the 6th day of April they did so. The draft was paid on the 7th of April, and an entry made by the cashier of the bank, "charge notes cashed."

The defendants claim in the first place that this transaction was a purchase, and not a discount, and that "the buying of promissory notes is not within the powers conferred upon a banking association." The plaintiff was, by the act above referred to, empowered "to carry on the business of banking by discounting bills, notes and other evidences of debt,    *    *    * by buying and selling gold and other bullion, foreign coins and bills of exchange, in the manner specified in their articles of association for the purposes authorized by this act, by loaning money on real and personal security, and by exercising such incidental powers as shall be necessary to carry on such business." (Laws of 1838, chap. 260, § 18.)

The transaction above narrated, and through which the plaintiff acquired the note in question, was, I think, directly within the power thus conferred to carry on its business, "by discounting    *    *    * notes and other evidences of debt," and this is so according to the general practice and understanding among men, and the decisions of our courts. "Discount" is ".reduction." (Roget's Thesaurus.)

In MacLeod on Banking, a book of authority, speaking of "price, discount and interest," the author says, page 43, "Now as money naturally produces a profit, it is clear that the price given for a debt payable a year hence must be less than the amount of the debt. The difference between the price of the debt and the amount of the debt is called discount. Therefore clearly the price, together with the discount, equals the amount of the debt; and as the price decreases the discount increases. In the language of the money market it is usual to estimate the value of money by the discount or the profit it yields; *and to buy or purchase a debt is always in commerce termed to discount it.*" And see further page 291, where the subject is amplified.

I find nothing in the statute to indicate that the word " discount" is there used in any other than the general sense, above referred to, nor can I perceive that any evil can result from the construction given to it in this respect by the trial court, and the learned judge who delivered the opinion at General Term. It accords also with the decisions of the courts. In *Tracy* v. *Talmage* (18 Barb. 456), referring to the provisions contained in section 18 of the law above cited, and a banking association organized under it, the court say: "It was authorized, among other things, therefore, 'to discount' not only bills and notes, but other evidences of debt, without restriction, and to loan money on any kind of security 'real' or 'personal.' 'Now to discount' includes to buy, for discounting at most is but another term for buying at a discount" (page 462). And although the judgment rendered was subsequently modified by this court (14 N. Y. 462), it was not in disaffirmance of the views above cited. Passing intermediate cases, we find *Johnson* v. *National Bank of Gloversville* (74 N. Y. 329), where, although the distinction now insisted upon was not taken, or before the court for judgment, yet the terms "discount" and "purchase" were used interchangeably, and as synonymous, in construing the act of Congress therein referred to, § 197, as applied to business paper taken by a National bank, and the argument deduced in that case from the word "purchase," applies, I think, with more

force to the case before us.    Many other authorities to the same end are cited by the learned counsel for the respondent, and they might easily be increased, but it is unnecessary to refer to them. The legislature itself has given to the provision in question the same construction.    By the act (chap. 193, Laws of 1870, amending the act of 1838), such "banking association is authorized to take, receive, reserve and charge, on every loan or discount made, or upon any note, bill of exchange or other evidence of debt," interest at the rate of seven per cent in advance; it prescribes a penalty for taking more, and then declares that "the purchase, discount or sale of a *bona fide* bill of exchange, note or other evidence of debt    *    *    *    at not more than the current rate of exchange, or a reasonable charge for collecting in addition to interest, shall not make a case within the penalty." It is thus assumed that the power to purchase a promissory note is contained in the act thus amended, and by this later provision we have a legislative interpretation of the words used in the earlier statute.    It is also to be observed that the act just cited of 1870 is broader than the act of Congress, relating to the same matter (§ 5197, U. S. Rev. Stat.), for the latter applies its last clause to the purchase, etc., of bills of exchange only, while the former includes notes and other evidences of debt. I have not overlooked the authorities referred to by the learned counsel for the appellants as holding a different doctrine.    The ones chiefly relied upon by him are *Niagara County Bank* v. *Baker* (15 Ohio St. 68), and *Farmers and Mechanics' Bank* v. *Baldwin* (23 Minn. 198), but the first turned upon the question of usury.    The action was against parties who had indorsed and transferred the notes in suit to the bank in this State in consideration of money advanced to them thereon at the rate of twenty per cent per annum discount, and the court say, "without undertaking to say what may be the legal bearings of this transaction in other directions, we are of opinion that the contract of indorsement was made upon a usurious consideration and cannot be enforced."    There was plainly a loan of money and it was made subject to the law of the State which permitted interest at seven per cent only, and to which

the bank was subject. If the action had been against the makers of the notes who were not parties to their negotiation to the bank, a different question would have been presented, and one more analogous to that now before us. In the other case the note in suit was made by Judd, and indorsed by Baldwin, its payee, for Judd's accommodation, for him to raise money upon, and the agent in whose hand it was placed by Judd for that purpose transferred it to the plaintiff, receiving from it the face of the note, less interest thereon at the rate of fifteen per cent per annum. Judd did not defend, but the indorser did, and set up that by its charter the plaintiff was prohibited from taking upon loans or discounts more interest than at the rate of twelve per cent per annum; that this statute was contravened by the plaintiff in this transaction, and so it was void. Upon the trial the court instructed the jury that the plaintiff had no power under its charter to buy the note in suit, or to become the owner thereof except by discounting or loaning money upon it at a rate of interest not exceeding twelve per cent per annum, and that if the plaintiff discounted the note, or became the owner of it as a security for a loan made at a rate of interest exceeding twelve per cent per annum, the verdict must be for the defendant; and so it was. It is difficult to see how any other result could have been reached. But the question determined in these cases does not concern us. The indorsement in the first was void for usury in the hands of the plaintiff; the note in the second never had a valid inception; both were in violation of positive law, and the theory upon which the actions rested was adopted to evade the statute. But if such questions had arisen under the banking law of this State, as amended in 1870, the plaintiff in each instance could maintain its action, being itself subject only to the penalty which that act prescribes, and after a careful examination of all the other cases cited in behalf of the appellant, I can find none which hold otherwise. It will be seen that in the principal cases cited (15 Ohio and 23 Minn., *supra*), the plaintiffs sought to uphold the transactions in question, upon the ground that the notes were purchased, and so not within the statute relating

to usury, or which regulated the rate of interest to be taken upon loans of money or the discount of a note. They did not succeed. In the case before us the defendants do not allege, and upon the facts of the case can not allege usury, but they say the note was purchased, not discounted, and so not within the terms of the statute. The defense then rests upon a supposed distinction or difference between discount and purchase, and upon the assumption that the plaintiff purchased and did not discount the note. I cannot so regard it. The note was one which was the subject of discount. It was a negotiable promissory note, properly made and indorsed. If it had been handed over the counter of the bank by Leonard, Sheldon & Co., seven per cent deducted and the residue paid to them, no one, I think, would deny that the transaction was, within any definition, a discount. Does it make any difference, in substance, that the bank or the bank officer went to Leonard, Sheldon & Co., and received the note over their counter? Clearly not. Is the distinction to be found in the writing which accompanied the note? It was not necessary; a delivery of the note would have conferred a title; Leonard, Sheldon & Co. would have ceased to be the owners, and the bank would have become the owner of the paper. Does the paper change the character of the title? If the note had been taken to the bank, offered for discount and accepted, and some evidence of the act asked for, the bank would have written:

"Received of Leonard, Sheldon & Co., and dis-
counted for them — Note, C. F. Parker & Co.,
due June 30 .................................. $3,000 00
Ind. A. Law and Jno. Savery's Sons, eighty-seven
days at nine per cent.................... 65 25
                                        ‒‒‒‒‒‒‒‒
                                        $2,934 75 "

Would not the title of the bank have been precisely the same as now? In the one case the vendor and in the other case the vendee states the contract; nor would it have changed the

meaning of the paper if the words "bought of" were substituted for "discounted for." This supposed paper and the one actually drawn complement each other, and taken together describe the transaction. Nor does the fact that Leonard, Sheldon & Co. did not indorse the note make any difference. A note payable to the order of the maker becomes, when indorsed, payable to bearer. That was this case. If it had been payable to the order of Leonard, Sheldon & Co., they might have indorsed it without recourse. The money in either form would have been lent or advanced, without personal liability on the part of the person receiving it, for the loan or advance would have been made as it was in this case, on the credit of the note, and when that was paid the loan would be discharged.

I think the transaction was within the statute, and whether it is called a discount or a purchase, valid. I am unable to see any merit in the objection that the title to the note is rendered invalid by reason of the "reduction of nine per cent," instead of seven. If any penalty was incurred, which I do not concede, it was only the penalty prescribed by the act itself (Laws of 1870, chap. 193), and such defense or claim is not interposed by the answer in this case. Nor do I think it would have availed these defendants if it had been.

The violation of the statute is not a fact affecting the good faith of the holder of the paper as between itself, and one liable in any event for its payment. If the statute contained words of prohibition, a different question would arise and the cases cited by the appellant (*Bank of U. S. v. Davis*, 2 Hill, 451 ; *N. Y. State L. & Trust Co. v. Helmer*, 77 N. Y. 64) would apply, but it does not, nor does it declare that the transaction shall be invalid, or that no action shall be maintained upon the note so acquired, but instead thereof, preserves the note in the hands of the association, prescribing only a penalty to the benefit of which even the defendants are not entitled. Moreover, if the purchase of this note was beyond the scope of the plaintiff's powers as defined by the act under which it was organized, the defense thereby arising would not avail the defendants. They were not parties to the contract by which the

bank acquired title. They would stand in the same position so far as this defense is concerned, if the indorsement had been fairly made and the note issued in the business of the firm. The title is good as against them and payment of the note will forever protect them against a claim upon it by another person. The money of the bank was paid out in reliance upon their promise, and if not repaid, its creditors or its stockholders must suffer. Neither justice nor public policy requires that such a defense should prevail. The State has not interfered, and this action, if successful, will restore to the vaults of the plaintiff, to be " used in the legitimate business of the corporation," the money which it is alleged has been improperly diverted from it.

The transaction out of which the cause of action became the property of the plaintiff was not forbidden. It was not improper in itself, and if it was not within the exact letter of the law from which the plaintiff derived its existence, the fault is one which should give no advantage to the defendants. ( *Whitney Arms Co.* v. *Barlow*, 63 N. Y. 63 ; *Kent* v. *Quicksilver Mining Co.*, 78 id. 159, 185 ; *Gold Mining Co.* v. *Nat. Bank*, 96 U. S. 640.)

Is the plaintiff affected by the knowledge of Leonard? As we have seen, in the hands of his firm the note was so affected by the fraud of Law, that it could not be enforced by them. He was one of the directors of the plaintiff. From this circumstance alone nothing can be inferred. If the knowledge of the director was acquired in his official capacity, the bank also is presumed to have it; but if it was acquired as any private person might have acquired it, the bank is not chargeable. Leonard comes within the latter condition. The information which he had was not communicated to him as a director, nor did he acquire it while engaged in its business. It did not belong to the plaintiff and there can be no presumption that it was communicated to it. In behalf of the bank he did no act concerning the note or its purchase. The title to the note was perfect in the bank when its president perfected the bargain. Relying on that the money of the bank was paid. His

knowledge, therefore, cannot operate to its prejudice. (*Pres't, etc.* v. *Cornen*, 37 N. Y. 320.) It is further claimed by the learned counsel for the appellant that the case "should have been submitted to the jury to determine: First, whether plaintiff's disregard of the notice given by the form of the paper amounted to bad faith; and, second, whether or not Mr. Leonard did not participate as director in the purchase of the note by the bank." Upon the face of the paper the presumption was that the note was valid. It was perfect in form. It was not in fact void. Law had authority to use the firm name in the proper business of the partnership, and for aught that appeared to Mr. Puffer, or was known to him, it was made and used for its benefit; whoever paid value for it, and had not notice that the proceeds were not to be so used, would obtain a good title. This was the condition of the plaintiff and there was no evidence upon which a jury could have lawfully found otherwise. Nor was there any evidence upon which a jury could find that Leonard in any way acted for the bank in regard to its purchase. His subsequent knowledge that the paper was on the list of bills discounted is of no importance.

The judgment should, I think, be affirmed.

All concur.

Judgment affirmed.