## Neilsville Bank v. Tuthill.

1. Banking corporation—authority to discount notes and bills—may purchase—not *ultra vires*.

   A banking corporation authorized by its charter to carry on business by discounting bills and notes, has power to acquire title to a note by purchase. Such purchase is a discount within the usual and legal meaning of the term.

2. Same.

   A banking corporation may acquire title to such note, even though the act of purchase be *ultra vires*; and unless the law exgressly declares the act void the maker cannot interpose the plea of *ultra vires* as a defense in an action upon the note.

Filed October 4, 1886.

Appeal from the district court of Minnehaha county.

The facts are stated in the opinion.

*R. F. Kountz, R. J. MacBride* and *Boyce, Noyes & Boyce,* for plaintiff and appellant.

The plaintiff had unquestioned power, under the laws of

Wisconsin, to discount promissory notes. Laws of Wis., 1852, Chap. 479, (Abs. p. 13.)

"To discount includes to buy, for discounting is at most, but another term for buying at a discount." Tracy v. Talmage, 18 Barb. 456.

The purchase of a promissory note in the manner disclosed by the evidence in this case is a discount and not *ultra vires* of the plaintiff corporation. Atlantic State Bank v. Savery, 82 N. Y. 291; Pape v. Capitol Bank, 20 Kan. 457; Fleckner v. U. S. Bank, 8 Wheat. 349; Tracy v. Talmage, 18 Barb. 456; National Bank of Gloversville v. Johnson, 104 U. S. 279; Niagara County Bank v. Baker, 15 Ohio St. 68; Bouvier's Law Dict. "Discount;" Burrill's Law Dict. "Discount;" Streeter v. First National Bank, 24 N. W. Rep. 915; Merchants Bank v. Foster, 44 Barb. 456; People v. Metropolitan Bank, 7 How. Pr. 144; Bank of U. S. v. Waggoner, 9 Peters 378, 18 Hun. 41; National Bank v. Johnson, 104 U. S. 279; Niagara Co. Bank v. Baker, 15 Ohio St. 85; Pape v. Cap. Nat. Bank, 20 Kan. 440.

Even admitting that the transaction as disclosed by the evidence was a purchase of the note in suit, and even admitting that the transaction was on that account *ultra vires* of the plaintiff corporation, it is not a defense of which this defendant can avail himself; but can only be raised by the stockholers or the government under which the corporation exists. Atlantic State Bank v. Savery, 82 N. Y. 291; Gold Mining Co. v. National Bank, 96 U. S. 640; The Rider Life Raft Co. v. Roach, 97 N. Y. 379; National Bank v. Whitney, 103 U. S. 99; National Bank v. Mathews, 96 U. S. 621; Rutland & Burlington R. R. Co. v. Proctor, 29 Vt. 93; Sturgis v. Knapp, 31 Vt. 2, 62; Merchants National Bank v. Hanson, 21 N. W. Rep. 849; Streeter v. First National Bank, 4 N. W. Rep. 915 (Iowa); First National Bank v. Elmore, 3 N. W. Rep. 547 (Iowa); The Whitney Arms Co. v. Barlow, 63 N. Y. 62; Silver Lake Bank v. North, 4 John. Ch. 370; Ohio & Miss. Ry. Co. v. McCarthy, 96 U. S. 258; Farnam v. Del. & Hud. Canal Co. 61 Pa. St. 265; Hought v. Cook Co. Land Co. 73 Ill. 23, (same case 24 Am. Rep. 230); Whitney Mining Co. v. Baker, 3 Nev. 239; Hitchcock v. Galveston, 96

U. S. 351; Natoma W. & M. C. v. Clarkin, 14 Cal. 544; German-town Farmers Mut. Ins. Co. v. Dhein, 43 Wis. 420; Rock River Bank v. Sherwood, 10 Wis. 230; National Pemberton Bank v. Porter, 125 Mass. 334; Chester Glass Co. v. Dewey, 16 Mass. 94; Little v. O'Brian, 9 Mass. 423; Oneida Bank v. Ontario Bank, 21 N. Y. 490; Bissell v. M. S. & M. R. R. Co. 22 N. Y. 262; Parish v. Wheeler, 22 N. Y. 494; Buffett v. Troy & B. R. R. Co. 40 N. Y. 168. Hurd v. Green, 17 Hun. 334; Bly v. Second National Bank, 79 Pa. St. 453; Grant v. Henry Clay Coal Co. 80 Pa. St. 208; Bank v. Hammond, 1 Rich. Law 281; First National Bank v. Gillian 72 Mo.; same case 20 Am. L. Reg. 419; Franklin Ave. Germaine Saving Institution v. Roscoe Board of Education, 75 Mo. 408, to the same effect 76 Mo.; New York Mut. Life Ins. Co. v. Wilcox, 8 Biss. C. Ct. 203; Bank v. Poitaiant, 3 Randolph 141; Barrow v. N. & C. T. Co., 9 Humph. 304; Chambers v. St. Louis, 29 Mo. 576; Hayward v. Davidson, 41 Md. 212; Stewart v. National Bank, 2 Abb. (N. S.) 424; to the same effect Gold Mining Co. v. National Bank, 96 U. S. 640; The Rider Life Raft Co. v. Roach, 97 N. Y. 379; The Rutland & Burlington Railroad Co. v. Proctor *et al.*, 29 Vt. 93; Chester Glass Co. v. Dewey, 16 Mass. 94, same case 8 Am. D. 128; National Bank v. Mathews, 98 U. S. 621; Whitney Arms Co. v. Barlow, 63 N. Y. 62.

Defense of *ultra vires* must be specially pleaded. Fulton Fire Ins. Co. v. Baldwin, 37 N. Y. 648; Bank of Utica v. Wells, 53 How. Pr. 242; Atlantic Bank v. Savery, 82 N. Y. 291; Farmers and Millers Bank v. Detroit & Mil. R. R. Co., 17 Wis. 372.

*Keith & Young*, for respondents.

The purchase by the bank of the note of J. L. Gates is void for want of power in the bank to make it. As such corporation it has not the power to become the purchaser of the paper. It may make a loan upon the paper, but cannot buy it. Talmage v. Pell, 7 N. Y. 328; Farmers & Mechanics Bank v. Baldwin, 23 Minn. 198; 23 Am. Rep. 683; Niagara Co. Bank v. Baker, 15 Ohio St. Rep. 69; Dunkle v. Remick, 6 Ohio St. Rep. 534.

The term discount when used in connection with banking business means the loaning of money on notes and bills and

taking the interest in advance. When not applied to banking business it may include the term purchase. Cases cited *supra*; McLean v. Lafayette Bank, 3 McLean 597; Fleckner v. Bank U. S., 8 Wheat. 338; Philadelphia Loan Co. v. Towner, 13 Conn. 259; Bouvier's Law Dictionary, title discount.

The attempted purchase of the note in question, by plaintiff, was a fraud upon the statute and therefore void. Bank of U. S. v. Owen, 2 Peters 538; Bank of Augusta v. Earle, 13 Peters 587; Fowler v. Scully, 72 Pa. St. 456; Downing v. Mt. Washington Road Co. 42 N. H. 295; Smith v. Alabama L. Ins. & T. Co. 4 Ala. 558; City of Montgomery v. M. & W. Pl. Rd. Co. 31 Ala. 76; McPherson v. Foster, 43 Iowa 48; Penn. Del., etc., Co. v. Dandridge, 8 Gil. & J. (Md.) 248; Morris & Essex R. R. Co. v. Sussex R. R. Co. 20 N. J. Eq. 542.

Contracts of corporations, which they have no power to make, are void, and courts will not allow them to maintain an action, or aid them in the enforcement of any claim, based upon such contract. McPherson v. Foster, 43 Iowa 48; Rochester Ins. Co. v. Martin, 13 Minn. 59; Miners' Ditch Co. v. Zellerbach, 37 Cal. 543; Philadelphia Loan Co. v. Towner, 13 Conn. 249; Hood v. N. Y. & N. H. R. R. Co. 22 Conn. 1; Talmadge v. Pell, 7 N. Y. 328; Farmers Bank, etc., v. Harrison, 57 Mo. 503; Pierce v. Madison, etc., R. R. Co., 21 How. 441; Morris & Essex R. R. Co. v. Sussex R. R. Co., 20 N. J. Eq. 542; Wheeler v. Essex Pub. Road Board, 32 N. J. L. 291; Pene., Del., etc., Co. v. Dandridge, 8 Gill & J. (Md.) 248; Pres., etc., of Md. Hospital v. Foreman, 29 Md. 524; The City of Memphis v. Gayoso Gas Co., 9 Heisk (Tenn.) 543; Bank of Chillicothe v. Swayne, 8 Ohio 257; Orr v. Lacey, 2 Doug. (Mich.) 230; Downing v. Mt. Washington Road Co., 42 N. H. 230; Smith v. Ala. L. Ins. Co., 4 Ala. 558; City Counsel of Montgomery v. M. & W. Pl. Rd. Co., 31 Ala. 76; Tracy v. Talmadge, 14 N. Y. 162.

The defendant has the right to avail himself of this defense and prevent a recovery. Fowler v. Scully, 72 Penn. 456; Talmadge v.Pell, 7 N. Y. 328; Niagara County Bank v. Baker, 15 Ohio St. 69; Farmers & Mechanic Bank v. Baldwin, 23 Minn. 198; Penn., Del., etc., Co. v. Dandridge, 8 Gill & J. (Md.) 248;

Pres., etc., of Md. Hospital v. Foreman, 29 Md. 524; City Counsel of Montgomery v. M. & W. Pl. Rd. Co. 31 Ala. 76; Thomas v. Brady, 10 Barr, 170; Scott v. Duffy, 2 Harris, 20; Evans v. Drew, 12 Harris, 65.

W. E. CHURCH, J.   The plaintiff is a banking corporation, organized under the general laws of the state of Wisconsin, and transacting its business within that state.    This action was brought to recover  the amount due upon a  promissory note dated January 1, 1884, giving by the firm  of which the defendant is the surviving partner to one J. L. Gates, for $3,000, payable July 1, 1884, with interest at 8 per cent., and by said Gates transferred to the plaintiff January 31, 1884.

The complaint states that Gates "sold and delivered" the note to plaintiff.   The testimony of  Joseph Mooley, plaintiff's cashier, so far as material to the present inquiry, is:  "I purchased the note in question of J. L. Gates  on  the  31st day of January, 1884.   I gave him three thousand and ten dollars. *   *   *   Our bank has a board of directors, and a president and cashier.   The board of directors have nothing to do with reference to discounting notes for the bank.   I generally do that  * *   *   I placed the money to his (Gates') credit in the bank." The note appears to have been regularly endorsed by Gates.

At the close of plaintiff's evidence, the  court, on motion of defendant's counsel, directed a verdict for the defendant, upon the ground that  the  plaintiff, being a banking corporation, incorporated under the laws of  Wisconsin, had  no authority to purchase this note, and that the purchase, being *ultra vires*, and therefore void, the plaintiff acquired no title to the note, is not the real party in interest, and therefore cannot maintain any action upon the note.

From the judgment entered upon said verdict, and the order refusing a new trial, this appeal is taken, and the sole question presented for our consideration is whether this direction of the trial court was the proper one.

The statute of Wisconsin, which is relied upon to sustain the judgment, provides that "such association shall have power to carry on the business of banking by discounting bills, notes

and other evidences of debt; by receiving deposits; by buying and selling gold and silver bullion, foreign coin, and foreign and inland bills of exchange; by loaning money on real and personal securities; and by exercising such incidental powers as may be necessary to carry on such business."

The contention of the respondent's counsel is that the bank never acquired any title to the note, because—First, the power of banking corporations under this act, in the acquisition of title to promissory notes, is limited to "discounts," as he defines that term, to-wit, the loaning of money on notes and bills, and taking the interest in advance, and does not extend to the buying or purchasing of notes; and, second, the transaction in question was a purchase, as distinguished from a discount.

At the outset, it must be observed that there is certainly nothing inherently illegal, either in the original contract between the defendant and Gates, i. e., the promissory note, nor in the transfer thereof to, and its acquisition by, the plaintiff. Such transactions are among the most ordinary and important operations of banks. And, again, were this particular transaction conceded to have been a discount, it would hardly be denied that plaintiff would have acquired title to the note, and could have maintained an action upon it, even although it were held only as security for a loan. Stripped of all unnecessary dress, the proposition is that, although the plaintiff had an undoubted right to acquire title to this note, yet, unless the transaction be such as can technically be termed a "discount" within respondent's definition of that term, it was absolutely void, no title passed to the bank, and no action can be maintained upon it.

It may be remarked that to the payee Gates the commercial result is the same in either case. He gets so much money placed to his credit. So, also, in either case, the bank pays so much money out of its funds. Upon its face, *ex æquo et bono*, the proposition has not much to commend it.

A considerable portion of the argument of the respondent's counsel is based upon the supposed illegality of the transaction; but there is a clear distinction between those transactions

which are illegal, either because expressly prohibited, or be-
cause contrary to the general policy of the law, and those
which are merely *ultra vires, i. e.* beyond the powers conferred.
In the former class of cases, it may often well be urged that
courts of justice will not lend their aid to a violation of the law
although even here the rule has been greatly relaxed.   DeWolf
v. Johnson, 10 Wheat. 367; Gold Mining Co. v. Natinal Bank,
96 U. S. 640; National Bank v. Mathews, 98 U. S. 621; Oates v.
National Bank, 100 U. S. 250.   In the latter class no such rea-
son exists, and the rule may be regarded as a sound one which
declares that the plea of *ultra vires* shall not prevail when it
would defeat the ends of justice, or work a legal wrong.   Rail-
way Co. v. McCarthy, 96 U. S. 258.

The principal cases upon which respondent relies are
Farmers & Mechanics Bank v. Baldwin, 23 Minn. 198; Niagara
Co. Bank v. Baker, 15 Ohio St. 69.

The proposition contended for is stated in its broadest
form in the first of these cases, which was a suit by a bank
upon a note purchased by it.   In concluding its discussion of the
case the court said: ''Having no corporate capacity to make the
contract of purchase, the plaintiff never acquired any title to
the note in suit, and the attempted act of purchase was strictly
*ultra vires,* and conferred no rights whatever.''   An examina-
tion of the case, however, discloses the fact, which we do not
remember to have been brought to our attention on the argu-
ment, that it differs from the case at bar in the very particular
upon which the decision of the court turned.   In the Minnesota
case the note was made by Judd to the order of Baldwin; in-
dorsed by Baldwin for Judd's accommodation; transferred by
Judd to Patterson; and by Patterson transferred to the bank,
without his own endorsement, the bank paying him the face of
the note, less 15 per cent., the legal rate being 12 per cent.
The plaintiff, to avoid the effect of the usury, claimed that
it had purchased the note.   The defendant, who was the ac-
commodation indorser, claimed that the bank had discounted
the note by loaning Judd money thereon at a usurious rate.
The court below instructed the jury that plaintiff had no power

to buy the note, or to become the owner thereof, except by discounting it, and that it had no power to discount it at a rate exceeding 12 per cent., and that, if the plaintiff discounted the note at a greater rate, they must find for defendant, which they did.   Upon appeal, after stating that "it is conceded that plaintiff's only title to the note in question  rests upon  its absolute 'purchase as a chose in action from one Patterson, the then owner, for a specific sum agreed upon and paid at the time of the purchase," the court proceeds to examine their statute, (similar to the Wisconsin statute) and concludes that it confers no right to purchase notes, but only to discount them; and thereupon remarks as follows: "Discounting a note and buying it are not identical in meaning; the latter expression being used to denote the transaction when the seller does not endorse the note, and is not accountable for it.   (1 Bouv. Law Dict. tit. 'Discount;') and it is admitted that such was the character of the transaction in this case."   And, again: "Though, as urged by plaintiff, the bank acquires a title to discounted paper, and hence may, in a certain sense, be said to have purchased it, yet it is a purchase by discount, which is permitted, and does not involve the exercise of a power of purchase in any other way than by discount."

I do not care to discuss the Ohio case cited any further than to observe that the court labored under the disadvantage of being compelled to decide according to what it supposed to be the law of New York, as established, not by any direct adjudication upon the points, but by decisions involving somewhat similar principles; and even in that case the court says that "it is undeniably clear that the term 'discount,' when used in its general sense * * * is equally applicable to either loans or sales by way of discount, when a sum is counted off or taken from the face or amount of the paper at the time the money is advanced upon it, whether that sum is taken for interest upon a loan, or as the agreed price upon a sale."

In the subsequent case of Smith v. Exchange Bank of Pittsburg, 26 Ohio St. 141, which was an action against the drawers and acceptors of a bill of exchange upon the objection

that the bank had no capacity to acquire title to the bill sued on, the court says: "The answer sets up that the bank purchased the bill of the holders, the payees. It does not state that the purchase was made at a usurious rate of discount, but it avers that, under the act of congress,   *   *   *   it had no authority to purchase the bill. It seems to be the idea of the counsel making the objection that negotiable paper, perfect and available in the hands of the holder, is not the subject of purchase by a national bank, at any rate of discount. This view we think entirely erroneous. We see nothing in the act of congress, nor in reason, why a borrower may not obtain the discount by a bank of the existing notes and bills of others, of which he is the holder, as well as of his own paper, made directly to the bank,"—from which it would seem that so far as the court recognized any distinction at all between discounts and purchases, in the acquisition by banks of commercial paper, in the usual course of business, that distinction would exist only in respect of the classes of paper mentioned, both of which might, with equal propriety, be subject to such acquisition.

The case of Fleckner v. United States Bank, 8 Wheat. 339, is very important in this connection, and, as we think, from the use made of it in some of the cases cited, has been somewhat misapprehended. It is cited as sustaining the doctrine contended for by respondent, but a careful examination of the case will show that such was not the purpose of the court. It was contended there that, under the clause in the charter of the bank which prohibited it from dealing or trading in any except certain specified articles, it could not purchase promissory notes; and that the note in question, which, after passing through several hands, had finally been transferred to the United States Bank by the Planters Bank, was purchased by the United States Bank. The action was against the maker, and the case presented several features similar to the case at bar. The court says: "Certainly there is no pretense to say that, if discounting promissory notes be a purchase in point of law, it could have been the legislative intention to include such

an act in the prohibition. It is notorious that banking opera-
tions are always carried on in our country by discounting notes.
* * * * But in what manner is it to loan? What is it to
discount? Has it not a right to take an evidence of the debt
which arises from the loan? If it is to discount, must there not
be some chose in action or written evidence of a debt, payable
at a future time, which is to be the subject of the discount?
Nothing can be clearer than that, by the language of the com-
mercial world, and the settled practice of banks, a discount by a
bank means, *ex vi termini*, a deduction or drawback, made upon
its advances or loans of money upon negotiable paper, or other
evidences of debt payable at a future day, which are transferred
to the bank." I have italicized those words which I deem ex-
pressive of the particular purpose of the court in using the
foregoing language. The court proceeds: "If, therefore, the
discounting of a promissory note according to the usage of
banks be a purchase within the meaning of the ninth rule above
stated, (upon which serious doubts may well be entertained,) it
is a purchase by way of discount, and permitted, by necessary
inference; from the last clause in that rule."

The last clause of the rule referred to prohibited the bank
from taking "more than at the rate of six per cent. per annum
for or upon its loans or discounts," and this clause, with one
or two others which provide for the establishment of "offices of
discount and deposit," contain the only suggestion, even, of any
power conferred upon the bank by its charter to discount or
purchase promissory notes. So, then, here was no direct au-
thority to discount, and an express prohibition against dealing
or trading in anything except certain designated articles; yet
the court upheld the right to discount as one inherently essen-
tial to the usual operations of a bank, and maintained the va-
lidity of the transaction before it, which, in all its essential
facts, was similar to the one at bar, as being, at least, "a pur-
chase by way of discount." The more modern authorities am-
ply sustain this theory of such transactions. Tracy v. Talmage
18 Barb. 456; Nash v. White's Bank of Buffalo, 68 N. Y. 396;
Atlantic Bank v. Savery, 82 N. Y. 291, citing, with express ap-

proval, the language of the supreme court in she case of Tracy v. Talmage, that "to discount includes to buy for discounting, —at most, is but another term for buying at a discount;" Pope v. Capital Bank of Topeka, 20 Kan. 440; National Bank v. Johnson, 104 U. S. 271.

I am clearly of the opinion, therefore, that the transaction in question, by whatever name it may have been designated by the parties or witnesses, was a "discount" within the usual and legal acceptation of the term.  But, if this were not so, there are other reasons why the objection could not prevail.  It will be observed that the objection derives whatever force it possesses from the assumption that, because the bank had no right conferred upon it by its charter to purchase notes, therefore no title could be acquired by it to any notes by purchase.  I am unwilling to concede the correctness of this proposition.

In the case of Parish v. Wheeler, 22 N. Y. 494, a railroad company had bought a steamboat, which it mortgaged as security for a debt.  On default, the mortgagee sold the boat, and refused to credit the proceeds, on the ground that the company had no right to purchase steamboats.  The court says, in reference to such purchase:  "In all this I can see nothing unlawful, except the want of legal power or right to buy the property.  But it was actually bought, paid for, and delivered, and therefore became a part of the estate and assets of the company.  The company could sell or pledge it to a creditor, and could redeem the pledge by paying the debt.  In acquiring the ownership of such property, the corporation may have usurped a right not granted by its charter, but the acquisition was nevertheless a fact which no legal refinement can deny. It was a fact, too, having all the legal relations and incidents of ownership."

Again, in Bissell v. Michigan South R. Co., 22 N. Y. 262, the same court says:  "Corporations have no right to violate their charters, but they have capacity to do so.  The plea of *ultra vires*, according to its just meaning, imports not that the

corporation could not, and in fact did not, make the unauthorized contract, but that it ought not to have made it.''

The highest English courts have taken the same view of this question. In the case of Ayers v. South Australian Banking Co., L. R. 3 P. C. 548, a banking company, whose charter contained a clause declaring that it should not be lawful for the company to advance money on the security of merchandise, did make advances on the faith of receiving, as security, a preferential lien on the wool to be shorn from the sheep of the party in whose favor the advances were made. The company subsequently brought trover for the wool on the agreement giving them the lien, and, on appeal to the privy council, their action was sustained. Upon the objection that the transaction was *ultra vires* the court said, among other things: "There may be, also, question whether, under any circumstances, the effect of violating such a provision is more than this: that the crown may take advantage of it as a forfeiture of the charter; but the only point which it appears to their lordships is necessary to be determined in the present case is this: that, whatever effect such a clause may have, it does not prevent property passing, either in goods or in lands under a conveyance or instrument which, under the ordinary circumstances of law, would pass it. The only defense which can be set up here (there is no plea of illegality) is under the plea of not possessed;—that the right of property and the right of possession never passed to the plaintiff. Their lordships are of opinion that, whatever other effect it has, it cannot have the effect of preventing the property passing." See, also, National Bank v. Mathews, 103 U. S 621, and cases cited on pages 626–628.

I think, therefore, that, in either aspect of the transaction, the title to the note in question passed to the bank, and that it was the real party in interest, and, such being the case, I do not see upon what principle the defendant could avail himself of any supposed want of authority in the bank to purchase this note, as a defense to the action; that is, unless the transaction

was absolutely void, (which I think it certainly was not,) what right has the defendant to question it?

This precise point was met and disposed of in the case of Fleckner v. United States Bank, *supra.* The court says (page 354): "If, indeed, the law were otherwise, it would not follow that the transfer to the bank of the present note would be void, so that the maker of the note could set it up in his defense. The statutes of usury of the states, as well as of England, contain an express provision that usurious contracts shall be utterly void, and, without such an enactment, the contract would be valid, at least in respect to persons who are strangers to the usury. The taking of interest by the bank beyond the sum authorized by the charter would doubtless be a violation of its charter, for which a remedy might be applied by the government; but, as the act of congress does not declare that it shall void the contract, it is not perceived how the original defendant could avail himself of this ground to defeat a recovery."

Many other cases might be cited in support of the views thus expressed, which I consider to be sound and well settled, both in reason and public policy; but it is unnecessary to refer to them. Some of those which I have cited upon one proposition will be found to embrace the others also, especially the case of Atlantic State Bank v. Savery, *supra,* which contains a discussion of all the questions involved in this case, although the court, in attempting to distinguish the Minnesota case, has erroneously assumed that the decision of the supreme court merely affirmed the instructions of the lower court; and it is manifest that if the doctrine of the New York case is good law, as I think it is, the Minnesota case could not be upheld on the grounds stated in the opinion therein.

For all these reasons, I think the court below erred in directing a verdict for defendant, and that the judgment and order appealed from should be reversed, and a new trial ordered. Judgment reversed.

PALMER, J., dissenting.    TRIPP, C. J., did not sit in the case.