(25 App. Div. 73.)

DUNN v. O'CONNOR.

(Supreme Court, Appellate Division, Third Department.   January 5, 1898.)

1. UNDUE INFLUENCE—HARMLESS WRONG.
    Where a bank president alleged as a defense to a mortgage to the bank, given by him to secure loans to himself, that he was induced to execute the mortgage by undue influence by those who stood in a confidential relation to him, but it appeared that it was right and just for him to execute the mortgage, and that in doing so he did not act in fraud of his creditors or injure his estate, the court will not consider whether he was unduly influenced, since the wrong, if any, was harmless.

2. MORTGAGES—AGREEMENT NOT TO RECORD—VALIDITY.
    A bank president cannot set up as a defense that a mortgage given by him to secure a loan to the bank is void because the recording of it was a breach of an agreement not to record it, and therefore a fraud on him, where to have withheld the mortgage from record would have enabled him to have fraudulently imposed on new creditors.

**3. ESTOPPEL TO DENY LEGALITY OF TRANSACTION.**

Where a bank made a loan to its president, through himself, which is in excess of one-fifth of its capital stock and surplus, and hence in violation of Banking Law (Laws 1892, c. 689) § 25, the transaction is not malum per se, and the bank is not in pari delicto with the president; and therefore the president is estopped to set up the illegality of the loan as a defense to an action to foreclose a mortgage given by him to secure it.

**4. ELECTION OF REMEDIES—MORTGAGES—FRAUD.**

Since one who, while president of a bank, made illegal loans to himself, is estopped to set up the illegality in an action to foreclose a mortgage given by him to the bank as security, the mortgage may be foreclosed, although an action could be maintained to compel him to restore the money because of the illegality.

**5. BANKS AND BANKING—MORTGAGE SECURITY—VALIDITY.**

A mortgage given to a bank to secure loans previously made is not void because it provides that the mortgage shall cover renewals of the debt secured, by reason of Banking Law (Laws 1892, c. 689) § 43, which provides that banks may take mortgages on real estate to secure loans made by such corporations, and in satisfaction of debts contracted in the course of their dealings, since such renewals are not future loans, within the statute, which should be construed as an aid, not only to maintaining quick assets, but also to collecting past indebtedness.

**6. SAME.**

Where a mortgage given to a bank to secure a loan previously made provides that it shall also secure future loans, it is not void under Banking Law (Laws 1892, c. 689) § 43, providing for the taking of mortgages by banks in satisfaction of debts previously contracted, where no future loans were made.

**7. APPEAL—PRESUMPTION AS TO FINDINGS.**

Where a witness is being cross-examined in order to bring out certain facts, and the evidence is excluded, and the judge promises that he will find the facts to be as they are sought to be established (stating them) whereupon the cross-examination is suspended, but no finding is made as promised, the appellate court will assume that the trial judge would have made the finding promised if he had been seasonably requested to do so, and the facts will therefore be assumed to be as stated by him.

Appeal from trial term.

Action by George W. Dunn, as receiver of the Merchants' Bank of Binghamton, against Edmund O'Connor, as assignee, etc., of Erastus Ross, impleaded with others, to foreclose a mortgage. From a judgment in favor of the plaintiff, defendant O'Connor appeals. Affirmed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

A. D. Wales, for appellant.
Stephen C. Millard, for respondent.

LANDON, J. 1. It is urged by the appellant that the mortgage was made and accepted with the intent to hinder, delay, and defraud the creditors of the mortgagor. The case presented is that of a bank president who abused his position by making the bank his unsecured creditor to the amount of nearly $150,000, and who, when pressed by some of the other officers of the bank to give it this mortgage to secure his debt, and at the same time secure the bank from impending ruin, did give the mortgage. This seems like an act of simple justice. It is not impossible, however, that it was also made with the intent to hinder, delay, or defraud other existing or subsequent creditors.

Erastus Ross, the mortgagor, owed to creditors other than the bank about $109,000; and his assets, other than those mortgaged to the bank, were about $45,000. Besides, he was a member of the firm of E. Ross & Sons, private bankers, of which, and of whose individual members, defendant is the assignee. This firm had liabilities to the amount of $97,000, and assets to the amount of $15,000. The sons of Erastus Ross had individual debts amounting in the aggregate to $170,000, and assets aggregating $156,000. Unless a case is made showing that the general creditors of Ross have equities which would defeat the mortgage given by him to the bank, if as between him and the bank it is valid, it is valid as to them. It is a sufficient answer that the trial court, upon ample evidence to justify the finding, has found that the mortgage was not given with any such intent. We are strongly urged to reverse this finding. We cannot do so. In our judgment, this finding is right.

2. It is urged that the draftsman of the mortgage did not draw it according to the contract and understanding of the parties, but inserted in it provisions not embraced in such understanding, and not known to the mortgagor, and not assented to by him. The trial judge found otherwise. We think the defendant's contention in this respect was not only unproven, but the contrary clearly shown.

3. It is further urged that the mortgage was the result of fraud and undue influence exercised upon the mortgagor by two of the directors of the bank, who stood in a confidential relation to him. This the finding of the trial judge negatives, upon evidence equally convincing. It certainly was right for Mr. Ross to secure the bank, unless in so doing he committed a fraud upon his other creditors, or thereby injured himself or his estate. It does not appear that he committed any such fraud, or injured himself or his estate. The court in such case will not consider whether he was induced by undue influence to do right, because in no case does the court redress a wrong which has been harmless. It is a wrong causing damage, of which the court takes cognizance. In the interviews and negotiations which were ended by the execution and delivery of the mortgage and its acceptance by the bank, Mr. Ross repeatedly objected to having the mortgage recorded. It would be injurious, he said, to his credit, humiliating to his pride, and perhaps would involve his displacement as president of the bank. Messrs. Davis and Richards, who pressed him to give the mortgage, assured him that he would not be displaced as president, but refused to make any promise that the mortgage should not be recorded, disclaimed their power to bind the bank by any such promise, and referred the matter to the board of directors; giving him the assurance that the bank would, no doubt, delay recording the mortgage so long as it should feel safe in doing so. The mortgage was delivered to the bank January 12, 1895, and recorded January 21, 1895, 1 hour and 10 minutes before Mr. Ross made his general assignment to the defendant. Mr. Richards, counsel for the bank, knew that the assignment was about to be filed, and the board of directors of the bank, when it accepted the mortgage, having in the presence of Mr. Ross, intrusted the mortgage to Mr. Richards, with power to act as he thought best in respect to recording it, did cause it

to be recorded.    Mr. Ross had given up the struggle, and why should the bank wait any longer?    The defendant protests against the finding of the trial court that there was no agreement not to record the mortgage.    It is amply supported by the evidence.    There was no agreement upon the part of the bank not to record the mortgage, although there was a willingness not to record it so long as it could safely be withheld from the record.    The bank had some hope that Mr. Ross would extricate himself without compelling it to record the mortgage.    If there was such an agreement, the making and breaking it was not a fraud upon Mr. Ross, unless it was made with the fraudulent intention to break it, which is scarcely pretended; but it was the breach of an agreement, irremediable unless the agreement was lawful, and remediable, if lawful, by such damages as Mr. Ross sustained from the breach.    These damages might be deducted from the mortgage, but none are shown.    What would be the effect of keeping the mortgage from the record?    To enable Mr. Ross to impose upon new creditors.    This would be a fraud upon them.    The law cannot measure, in favor of a wrongdoer, the damages resulting to him from the nonaccomplishment of his meditated fraud.

4. The defendant urges that the various notes, guaranties, and indorsements of Mr. Ross which the mortgage was given to secure, so far as they exceed one-fifth of the capital stock and surplus of the bank, are void, because prohibited by section 25 of the banking laws (Laws 1892, c. 689).    This section provides:

"No corporation or banker to which this chapter is applicable shall—First—Make any loan or discount to any person, company, corporation or firm or upon paper upon which any such person, company, corporation or firm may be liable to an amount exceeding the one-fifth part of its capital stock actually paid in and surplus; but the discount of bills of exchange drawn in good faith against actually existing values or of commercial or business paper actually owned by the person negotiating the same shall not be considered as a part of any such loan or discount."

We do not pause to ascertain how great the excess over the limit is, but assume that there is some excess.    As the trial court, in effect, held, if the bank was prohibited from making these loans to its president, then the president, who caused the bank to make them to him, wronged the bank, to the amount of the excess, and should repay the bank the amount thus abstracted, and hence properly gave it the mortgage to secure such repayment.    The bank had, under the statute, the right to take a mortgage given to it in good faith upon real estate "by way of security for loans made by, or moneys due to such corporation."    Banking Law, § 43.    The twenty-fifth section is a command to the officers of the bank, as well as to the bank itself.    It is a shield for its protection, not a sword for its officers to destroy it with.    It is undoubtedly true that a contract prohibited by law is void, but if the contract is not wrong in itself, as violative of good morals or sound public policy, the prohibition cannot avail a party who in justice and equity is estopped to assert it, or who ought, in good conscience, to restore what he has received under it, or to restore its equivalent.    A contract forbidden to a corporation, not because it is wrong in itself, but because it may lead to business embarrassments, or make the corporation a less effective promoter of the purposes for which it is

formed, will not be permitted to defeat justice. As said in Pratt v. Short, 79 N. Y. 445:

"While the law will not enforce the prohibited contract, it will take notice of the circumstances; and, if justice and equity require a restoration of the money or property received by either party thereunder, it will, and in many cases it has given relief."

In the case cited the corporation had no right to discount a note, but it was permitted to recover the money advanced to the defendant upon it, as for money had and received which the defendant ought to restore. Here, if the loan was illegal, the money thus illegally obtained should be restored. In Arms Co. v. Barlow, 63 N. Y. 70, it is said:

"If the other party has had the benefit of the contract fully performed by the corporation, he will not be heard to object that the contract and performance were not within the legitimate powers of the corporation." Bank v. Savery, 82 N. Y. 291; Linkauf v. Lombard, 137 N. Y. 417, 33 N. E. 472; Rafts Co. v. Roach, 97 N. Y. 378; Oneida Bank v. Ontario Bank, 21 N. Y. 495; Taylor v. Bank, 66 Hun, 538, 21 N. Y. Supp. 643; Bank v. Matthews, 98 U. S. 621; Gold Min. Co. v. National Bank, 96 U. S. 640.

Nothing can be clearer than that an agent of a corporation, who as agent has forced its hand to contract with him to its hurt and his advantage, cannot plead that the contract, as to him, is ultra vires. The prohibitory statute is not thereby suspended or evaded, but the guilty agent is forbidden to use it. Even if Ross could charge that the bank's submission to his agency in loaning its money to him was wrongdoing by it, it could still uphold this mortgage, because it was not in pari delicto with him in originating the indebtedness. The defendant insists that the complaint does not seek to avoid the loans and recover the money. If—as we think is the firmest ground for the recovery—Ross, and thus the defendant, is estopped from asserting the illegality of the loans, then the complaint is in proper form. If, because the loans were illegal, the money should be restored, the whole case is before the court. The one involves and discloses the other, no substantial variance exists, and the judgment conforms to the proofs.

5. It is objected that the mortgage contains a clause in respect to further loans and renewals, and since the forty-third section of the banking law only permits it to take mortgages upon real estate "by way of security for loans made by, or moneys due to such corporation," and "in satisfaction of debts previously contracted in the course of its dealings," that this mortgage is void. We think that when a bank is so unfortunate as to be compelled to take from a failing debtor such mortgage security for its debts previously contracted as it can prevail upon him to give, the mortgage is not void because it provides that in case of renewals the security shall cover them. Whether the limitation of the statute in respect to future loans and advances is simply a weapon in the hands of the government, and not available to the mortgagor, we need not decide. Bank v. Whitney, 103 U. S. 99, reversing Crocker v. Whitney, 71 N. Y. 161; Simons v. Bank, 93 N. Y. 269; Banking Law, § 18; Pratt v. Short, 79 N. Y. 437. Obviously the purpose of the statute is to maintain the bank in the possession of quick assets, and to prevent their absorption into real-estate as-

sets. It is plain that the statute was also intended to enable the bank to make collection of its debts previously contracted, and it should be construed in aid of that purpose. The bank in such case may be compelled to take its security upon the terms which the debtor imposes, and nothing is more common than his prayer for renewals. It would defeat the purpose of the act to construe provisions for renewals of long-standing debts as invalidating the entire security. Such renewals are not future loans and advances, within the meaning of the prohibition of the statute. If, however, the mortgage contains any clause which may be construed to cover future loans or advances, it also contains a disclaimer of all obligation on the part of the bank to make them; and, as none was made, no case exists calling for the consideration of the validity of such clause. If A. lends B. $100 for one year at 6 per cent., and if in the contract for its payment both agree that, if A. lends B. more money during the year, it shall be repaid at the end of the year, with interest at the rate of 10 per cent., and A. should lend B. no more money, no one would contend that, because the second part of the agreement was illegal, the first part was also illegal. In the mortgage before us, the existing indebtedness is a fact, and future further indebtedness is hypothetical. The first is in no wise dependent upon the second, and therefore is separable from it. The objections that the mortgage was not given and accepted in good faith, as required by section 43 of the banking law; that it violated the letter and spirit of the banking law, and was violative of good morals and public policy,—though pressed upon our attention, do not strike us with force. Indeed, we do not think the facts of the case permit Mr. Ross to be posed as a victim of the bank, or of its agents. Upon the merits, we are satisfied that this judgment is right. We find no reversible error in the rulings of the court in respect to the admission or exclusion of testimony.

The judgment should be affirmed, with costs.

After the entry of judgment and the settlement of the case, the defendant made and the court denied his motion for a new trial upon the ground, presented by affidavits and the case as settled, that during the trial the defendant's counsel was, upon cross-examination, examining Mr. Richards with regard to the financial condition of the Merchants' Bank at the time of its incorporation as a state bank, namely, March 24, 1891 (it having succeeded to the Merchants' National Bank of Binghamton, which had until then been in existence for 17 years); the object of the examination being to show that the Merchants' National Bank was insolvent, and that because of such insolvency the change from a national to a state bank was made, and that Erastus Ross and his three sons were then largely indebted to the bank, and that Richards knew it, and that their present indebtedness was largely renewals of the indebtedness then existing; the theory of defendant's counsel being that Richards, apprehensive of his own personal liability, because of his knowledge of these facts, and failure until then to exert himself to protect the bank from the loss they threatened, forced this mortgage from Ross, and intended to keep it secret until he could force other securities from E. Ross and from his sons, suffi-

cient to cover the debts of all of them, and therefore it was that he agreed that the mortgage should not be recorded, and that the bank also so agreed,—when plaintiff's counsel objected that this was not cross-examination, whereupon, after some colloquy between the court and the defendant's counsel, the court remarked:

"I am not able to find, upon the defendant's proof, that Mr. Davis or Mr. Richards intentionally made false promises at that time. I do not believe that they made actual promises. I believe that it was understood by Mr. and Mrs. Ross that further security would not be required, that it was understood that they would have further time, and that it was understood that this mortgage would not be recorded. Those are all natural inferences from the transactions. I believe that the same thing was understood by Mr. Richards and by Mr. Davis, and there is no proof here which would authorize me to find that these men made these promises, deliberately intending to violate them afterwards. Assuming all you are trying to prove was true, it would not constitute evidence of fraud. I am pretty well satisfied as to the facts in this case, upon your evidence. You have not enough proof here to show that Mr. Davis and Mr. Richards made promises, intending to break them, and I do not believe they did. I assume that all you want is true, and that they had full knowledge. Of course, Mr. Richards and Mr. Davis, here, you could not impeach. You have made them your witnesses upon material matters. But, assuming you could impeach them here, it is so against the natural order of things, and so against the probabilities of the case, that I do not think I could find, here, upon this evidence, that they were guilty of intentionally making promises that they intended to break; and that is your question of fraud, here. Defendant's Counsel: We think we should have all the evidence upon an appeal to the appellate court. The Court: I will give you findings here of specific facts, and, if I am wrong, you can correct me. I think these directors of the bank ought to have knowledge of the substantial condition of the bank, if they did not have it. I do not suppose they knew every detail of this indebtedness, but most of this indebtedness was in a large bulk, and these men on the examining committee should have known it. The presumption is that they did their duty, and knew of the substantial situation of the bank, and I think I should find so. There is nothing here that contradicts it seriously. Mr. Richards testifies he knew these boys were indebted to this bank in substantial sums, but he may not have known of the detail of it. Upon the evidence here. I shall find that both Mr. Davis and Mr. Richards had substantial knowledge of the condition of the bank."

And the defendant alleges that the court did not make the findings thus promised, and that thus he has been misled and prejudiced, and that, practically, there has been a mistrial. We pass, as overruled, all technical objections to this appeal, and consider it upon its merits. We assume the trial judge would have found the facts just as he said he would, if he had been seasonably requested, and hence we assume the facts to be as stated by him. But, for reasons already shown, the result should not be changed.

We affirm the order, with $10 costs. All concur.