SALVATOR PANTO, Respondent, *v.* KENTUCKY DISTILLERIES AND WAREHOUSE COMPANY, Appellant.

First Department, February 5, 1926.

Sales — action by buyer to recover advance payment on sale of whisky — plaintiff is wholesale liquor dealer — after contract was executed Federal authorities ruled that liquor could not be withdrawn for non-beverage purposes by wholesale liquor dealers — contract became impossible of performance and remained executory — plaintiff may recover advance payment though contract was illegal.

The purchaser of whisky held in bond may recover an advance payment on account of the sale, where it appears that he is a wholesale liquor dealer and that after the execution of the contract the Federal authorities ruled that liquor could not be withdrawn for non-beverage purposes by a wholesale liquor dealer, for, by the action of the Federal authorities, the contract became impossible of performance and remained executory and in such case, although the contract itself is illegal, the court will permit the purchaser to recover the amount paid in advance.

APPEAL by the defendant, Kentucky Distilleries and Warehouse Company, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 26th day of January, 1925, striking out the answer of the defendant herein, pursuant to rule 113 of the Rules of Civil Practice, and directing summary judgment in favor of the plaintiff, and also from a judgment entered in said clerk's office on the 30th day of January, 1925, pursuant to said order.

*Breed, Abbott & Morgan* [*Sumner Ford* of counsel; *Edward A. Craighill, Jr.*, with him on the brief], for the appellant.

*Griffiths & Content* [*Clarence V. Opper* of counsel; *William Russell Bogert* with him on the brief], for the respondent.

MARTIN, J. In an action for money had and received the plaintiff seeks to recover $2,000 paid as a deposit upon a contract for the sale of whisky. The contract is as follows:

" *December 2, 1920.*

" Memo. of sale.

" Sold to: Salvator Panto, 51 Grove Street, New York. Goods: as per the following list:

| | |
|---|---|
| " 20 Barrels ' Clear Springs ' Whiskey Spring 1913 at...................... | $5.35 per gal. |
| " 5 barrels ' W. J. Frazier ' whiskey Spring 1913 at...................... | $5.35 " " |
| " Less............................... | .10 " " |
| " The above goods are stored at Adams' General Bonded Warehouse, Kansas City, Mo. | f. o. b. Adams Gen'l. Bonded W. H. Kansas City, Mo. |

\* \* \* \* \*

| | |
|---|---|
| " 5 barrels ' Hermitage ' whiskey Spring 1912 at...................... | $5.50 " " |
| " 5 barrels ' Hermitage ' whiskey Spring 1913 at...................... | $5.50 " " |
| " 10 barrels ' Sharpe ' whiskey Spring 1913 at............................... | $5.35 " " |

f. o. b. distillery.

" *Advance Payment:* Received $2,000.00 as part payment to apply in connection with the foregoing sale.

" *Withdrawal Permit:* It is understood that forms #1410 will be furnished within the next 30 days."

It is asserted by plaintiff that when the contract was made he was a wholesale liquor dealer; that he could not obtain the necessary withdrawal permits, something additional to the basic permit entitling plaintiff to purchase and sell the liquor, because of a change in the regulations, of all of which due notice was given to defendant, the Attorney-General having held that " Congress intended that liquor for non-beverage purposes should be dealt in only by manufacturers and the wholesale and retail druggist."

There is a counterclaim for alleged breach of the contract on plaintiff's part, to which plaintiff replied, setting up as a defense

what is alleged in the complaint. It is shown that defendant did not place the whisky on the cars because the necessary withdrawal permits could not be obtained. The contract became impossible of performance. It remained executory. (*Standard Casing Co.* v. *California Casing Co.*, 233 N. Y. 413.)

The law will not enforce a prohibited contract. In *Morgan* v. *Groff* (4 Barb. 524, 526) the court said: " There is a distinction between executory and executed illegal contracts. Where money has been paid on an illegal contract which has been executed. and both the parties are *in pari delicto*, neither of them can recover from the other the money so paid; but if the contract is executory, and the party paying the money is desirous of rescinding the contract, he may do so, and recover back his money by action of assumpsit for money had and received.

" A distinction is taken where the action is in affirmance of an illegal contract, and the object of which is to enforce its performance; and where the action proceeds in disaffirmance of such a contract, and on the ground that it is void, and seeks to prevent the defendant from retaining the benefit which he has derived from an unlawful act."

In *Spring Co.* v. *Knowlton* (103 U. S. 49) it is said: " The law of New York does not in express terms forbid a corporation from issuing certificates for full-paid stock when the stock has not been fully paid. The illegality of such an issue is deduced from several sections of the law  under which the Congress & Empire Spring Company was organized, namely, sects. 38, 40, 41 and 49.* We think it is fairly inferable from the record that the trustees of the company, one of whom was Knowlton, did not know that the plan adopted by them for the increase of the stock was illegal, and that when they discovered that it was forbidden by the law, and before any harm was done or could have been done, the scheme was abandoned. Under such circumstances, the rule which could prevent the recovery of the money paid to carry on the illegal plan would be a very harsh one, not founded on any law or public policy."

In *Schley* v. *Andrews* (225 N. Y. 110) the court said: " The agreement was entered into by the plaintiff for the sole purpose of inducing the defendant to procure a divorce. * * * The confession, the court found, was intended as collateral security for the payment of the amounts stipulated in the agreement to be made.

---

* See 2 R. S. (6th ed.) 504, § 38; Id. 505, §§ 40, 41; Id. 507, § 49; Laws of 1848, chap. 40, § 10; Laws of 1853, chap. 333, § 2; Laws of 1848, chap. 40, §§ 11, 14.—[Rep.

The agreement and confession were illegal. (Domestic Relations Law [Cons. Laws, ch. 14], sec. 51.) They constituted a fraud upon the law. They were against public policy, and could not be enforced by legal process. (*Wolkovisky* v. *Rapaport*, 216 Mass. 48.) The judgment entered upon the confession occupies no better position. It has for its support an illegal consideration, which the court does not recognize and which it never hesitates to condemn. To this extent I understand all the members of the court are in accord. Some of them, however, are of the opinion that the action being in equity, and each of the parties being equally at fault, they should be left where the court finds them. This is the general rule, but it applies only to contracts which have been fully performed. It does not apply where the contract remains in whole or in part executory."

In *Dunn* v. *O'Connor* (25 App. Div. 73) the law governing this subject is set forth as follows: " As said in *Pratt* v. *Short* (79 N. Y. 445): ' While the law will not enforce the prohibited contract, it will take notice of the circumstances, and, if justice and equity require a restoration of money or property received by either party thereunder, it will, and in many cases has, given relief.'

" In the case cited, the corporation had no right to discount a note, but it was permitted to recover the money advanced to the defendant upon it as for money had and received, which the defendant ought to restore. Here, if the loan was illegal, the money thus illegally obtained should be restored."

In *Beram* v. *Kruscal* (18 Misc. 479) the court said: " The action was originally brought, according to the return, upon a cause of action which was orally pleaded, as follows: ' Money had and received, illegal contract and money illegally retained.' * * * Under that pleading the plaintiff could have recovered on proving that he entered into the contract of hiring in reliance upon the defendant's representation that he had a permit for the stand. If the plaintiff did not intentionally violate the public ordinances, the illegality of the contract would not be a bar to his recovering the money obtained from him by the defendant."

In *Kahn* v. *Rosenstiel* (298 Fed. 656) Judge Learned Hand passed upon a similar case, and said: " At the time when the contract was made the seller had a permit authorizing him to sell and the buyer a permit to buy, but neither party was a wholesale manufacturer or druggist, and the permits turned out to be void. The buyer paid down $10,000, but on discovery of the illegality of the permits and before any of the liquor was delivered he declined to proceed, and demanded a return of the money paid. If the contract was not fully executed the plaintiff may recover. *Spring Co.* v. *Knowl-*

*ton,* 103 U. S. 49, 26 L. Ed. 347; *Block* v. *Darling,* 140 U. S. 234, 11 Sup. Ct. 832, 35 L. Ed. 476. If executed, he may not. *Thomas* v. *Richmond,* 12 Wall. 349, 20 L. Ed. 453; *St. L. R. R. Co.* v. *Terre Haute R. R. Co.,* 145 U. S. 393, 12 Sup. Ct. 953, 36 L. Ed. 748; *Harriman* v. *Northern Securities Co.,* 197 U. S. 244, 25 Sup. Ct. 493, 49 L. Ed. 739; Williston on Contracts, §§ 1787, 1788. The theory is that until the contract is performed there should be a *locus pœnitentiœ.* Here the plaintiff alleges that, as soon as his assignor learned that the permits were void, he at once disaffirmed the bargain."

In *Adler* v. *Zimmerman* (233 N. Y. 431) the Court of Appeals passed on a similar transaction and said: " By the terms of the National Prohibition Act and the regulations adopted thereunder, it will be seen that to make the sale of the thirty barrels of whiskey in this case legal, it was necessary for Ryan or Adler to have had a permit to sell; for the defendants to have had a permit to sell or use so as to entitle them to procure intoxicating liquor, and for the defendants to have had also a permit to purchase, a copy of which should have been filed with the director, a copy with the vendor and a copy with the defendants themselves * * *.

" When, therefore, the plaintiff, either as principal or as agent, sold thirty barrels of whiskey, the presumption is that it was illegal until brought within the exceptions of the act, or it is shown to have been permitted by the Federal authorities."

In *Boer* v. *Garcia* (240 N. Y. 9) the court said: " We think that defendant now has the right to claim that if on the day for shipment he had complied with his contract and with conditions which were binding on him, he would have been compelled to enter upon a course which, so far as he could foresee, would lead to a violation of the law and that under such circumstances and in accordance with well-settled rules he had the right to draw back and refuse to go forward to what promised to be such a violation."

It is contended that this case is similar in all respects to *Basile* v. *Kentucky Distilleries & Warehouse Co.* (210 App. Div. 710), but there are many points of difference. One is the fact that in the *Basile* case there was a provision in the contract that " On failure of the buyer to furnish Forms 1410 within thirty days after March 1st, 1921, to cover shipment of all or any portion of the goods herein contracted for, he/they agrees to accept in lieu of such portion, warehouse receipts for whiskey in bond at Distillery Warehouse in Kentucky, in proportion of ten barrels for each 100 cases and to pay for same at the rate of $3.00 per proof gallon original gauge in bond * * *."

Moreover, in this case it is clear that the contract was made by

parties who believed themselves to be legally qualified to carry it through. Whether the failure to obtain the withdrawal permits is logically to be ascribed to a change in the regulations or to a change in the interpretation which the Federal authorities placed on the law, the result here would be the same. Substantially the situation was that because of such a change, of either kind, both being entirely beyond the control of the parties, the performance of the contract became impossible. If it be conceded that a correct interpretation of the law in the first place by the Federal bureaus would have inhibited such a purchase by a wholesale liquor dealer, justice and equity in this situation require that plaintiff have the benefit of the fact that, up to the time of the change referred to under the practical interpretation by those in charge of the enforcement of the law, the transaction was valid.

The order and judgment should be affirmed, with costs.

CLARKE, P. J., DOWLING, FINCH and McAVOY, JJ., concur.

Judgment and order affirmed, with costs.