**UNITED STATES v. DAKE et al.**

**SARATOGA SPRINGS COOPERATIVE MARKETING ASS'N, Inc. v. GOLD MEDAL FARMS, Inc.**

District Court, N. D. New York.

Dec. 1, 1941.

Butler, Kilmer, Hoey & Butler, of Saratoga Springs, N. Y., for defendants and third party plaintiff, Saratoga Springs Cooperative Marketing Ass'n, Inc.

Harold S. Fleischer, of New York City, for Gold Medal Farms, Inc., third party defendant.

COOPER, District Judge.

This is a motion by Gold Medal Farms, Inc., the third party defendant, hereinafter called Gold Medal, to strike out certain allegations from the reply interposed herein, to Gold Medal's cross-claims against Dake and Dake and Saratoga Springs Cooperative Marketing Association, Inc., by the defendants Dake and Dake, hereinafter called Dake, and the third party plaintiff Saratoga Springs Cooperative Marketing Association, Inc., hereinafter called Saratoga and a motion under Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, for a declaratory judgment and also for a summary judgment, chiefly on the ground that there is no genuine issue as to any material facts in respect to the

claims asserted by Saratoga and Dake against Gold Medal and for other and further relief.

The essential facts are these:

On the 15th day of March 1938, Gold Medal entered into a contract with Percy W. Dake and Charles V. Dake, hereinafter called Dake, by which during a term beginning April 1, 1938, and ending on March 31, 1939, Gold Medal agreed to purchase and Dake agreed to sell, a tank load of milk daily, which at the option of Gold Medal should hold between 312 and 323 cans of raw Grade B. milk of 40 quarts each, which should comply with the requirements of the Board of Health of the City of New York and the Department of Agriculture and Markets of the State of New York and any other duly constituted authorities who during the term of the contract may have jurisdiction and control of the subject matter of the contract.

The price fixed was the price paid by Sheffield Farms Company for milk testing 3.5% butter fat for dairy farmers in the 201-210 mile zone from the City of New York plus an additional handling charge of 20 cents per hundred weight to October 1, 1938. For the period from October 1, 1938 to and including March 31, 1939, the handling charge was to be 25¢ per cwt. of milk.

On September 1, 1938, Federal Milk Marketing Order No. 27 (State Order No. 126) became effective.

On the 30th day of September, 1938, the parties modified the said contract for the reasons stated in the contract as follows: "The purchase and sale of milk under certain conditions is now regulated by a Milk Market Administrator, who functions under the Federal and State Departments of Agriculture and who for brevity purposes is called the Market Administrator."

This modified contract provided that the party of the first part had suffered $5,000 damages, which the party of the second part admitted.

The modifying contract was to continue for the balance of the year ending March 31, 1939.

The modifying contract further provided that Gold Medal should pay Dake for milk sold and delivered in September 1938, $2.47 for every hundred-weight of milk irrespective of butter fat content delivered for the month of September and in addition thereto 23¢ per cwt. of milk delivered in September and for handling charges.

The modifying contract further provided that for milk sold and delivered from and after October 1, 1938, the price to be paid was the price in force during the remaining months of the contract as fixed by the orders of the Market Administrator for the respective months relating to milk testing 3.5% butter fat purchased from and at creameries located within the 201-210 mile zone and in addition thereto the following:

| | |
|---|---|
| For administration expenses of Market Administrator | $.02. |
| Freight differential | .015. |
| For all butter fat, no matter what the amount in excess of 3.5% | .06. |
| For handling charges for each 100 lbs. of milk | .23. |
| Total | .325. |

The contract further provided that if the butter fat content was less than 3.5%, Dake should receive the contract price but should not receive the .06¢ above referred to.

It was further provided that those modifications shall be in force only as long as the Milk Marketing Administration effectively functions, in which case the contract provides that after the marketing administration ceases to function the price shall be that of the original contract.

The contract further provided that as long as the party of the second part performed the terms of the contract the said $5,000 should not be demanded but if the contract was not lived up to, the $5,000 should be paid to Gold Medal.

Federal Milk Marketing Order No. 27 was suspended on February 1, 1939, and was not put into force again until July 1, 1939, three months after the expiration of the contract between Gold Medal and Dake.

On April 20, 1939, Gold Medal and Dake entered into a release by which in consideration of the payment of $3,365.30 Dake released and discharged Gold Medal from all the obligations of all the contracts between the parties up to and including March 31, 1939.

Thereafter and on the 13th day of November 1939, the parties of the contract met and Gold Medal paid Dake the further sum of $3,000 in full discharge of all obligations of Dake against Gold Medal and another release was executed by the parties which provided that such release should run to the successors and assigns of Gold Medal and should bind all the officers,

stockholders, directors, executors and administrators and assigns of Dake.

Thereafter and on or about the 28th day of February, 1941, the Federal Milk Marketing Administrator in the name of the United States and upon request of the Secretary of Agriculture of the United States brought an action against Dake and the Saratoga Springs Cooperative Marketing Association Inc., naming them as follows: "Saratoga Springs Cooperative Marketing Association Inc. and P. W. and C. V. Dake, individually and as co-partners trading under the name of P. W. and C. V. Dake." in which suit the plaintiff stated that the Saratoga Springs Marketing Association was indebted to the Milk Marketing Administrator for payments to be made to producers through the Producers Settlement Fund, in the sum of $12,240.89 for milk sold during the months of October, November and December 1938, and January 1939, and further alleged that Dake purchased from the defendant Saratoga Springs Corporation such milk at less than the minimum cost price which was in effect under Order 27, during the months of October, November and December, 1938 and January 1939, for which they paid the defendant Saratoga Springs less than the minimum class price which was in effect under Order 27 for the said months and demanded judgment also against Dake for the like sum of $12,240.89 and for injunction commanding both defendants to comply with Order 27 and to pay the said sum to the Market Administrator.

Both Saratoga and Dake in their answer to the complaint of the United States deny owing the Market Administrator the said sum of $12,240.89.

Thereafter, the defendant Saratoga in the action brought by the United States obtained leave and brought a third party complaint against Gold Medal as third party defendant, in which it is alleged that during the period from September 1938 to January 1939, the Saratoga Springs Co-operative sold and delivered to Gold Medal, the third party defendant, milk in the amount of 4,189,775 lbs. and that the price of milk was fixed and determined by the Federal Milk Marketing Administration in the sum of $118,620.18 and that Gold Medal had paid only the sum of $104,304.25, leaving due and unpaid from the said third party to Saratoga the sum of $14,316.15, and that no part of such balance has been paid except the sum of $3,000 paid during No-

vember 1939, and that there was due from Gold Medal to Saratoga the sum of $11,316.-86 and that the milk referred to was the same milk referred to in the complaint of the United States against Saratoga and Dake and in which it is claimed that this defendant has failed to pay the Marketing Administration through the Producers Settlement Fund the aforesaid $12,240.80 and demanded judgment against Gold Medal in the sum of $11,316.56.

Gold Medal denies that it bought any milk from the defendant and third party plaintiff Saratoga.

Gold Medal for a further defense alleges that in March 1938, Dake negotiated with Gold Medal for the sale of milk and in the course of the negotiations in substance warranted and represented:

(a) That it owned, operated, controlled and maintained a creamery located at Saratoga Springs, New York.

(b) That they were duly licensed by the Department of Health of the City of New York to ship milk to the City of New York.

(c) That they were duly licensed by the New York State Milk Control authorities to operate said creamery and they duly filed with said authorities a bond in the sum of $35,000 to assure payment to all producers who sold milk to Dake and who delivered same to the Saratoga Springs Creamery.

(d) That they (Dake) acquired their milk by purchase from various sources and various sections of the State. .

(e) That such milk varied in butter fat content, but when delivered to the Creamery aforesaid all milk from whatever source was put into a common vat and blended and as the result thereof a composite fixed butter fat content resulted.

That thereafter Dake and Gold Medal entered into two separate written agreements, the contract of March 15, 1938, called "A", and the modifying contract of September 30, 1938, called "B".

That by the middle of April 1939 Gold Medal had paid Dake for the milk delivered the sum of $150,058.25 and if controversies had not arisen Gold Medal would have been obligated to pay Dake $156,777.43 but that controversies did arise which were finally adjusted by the release of April 20, 1939, when Gold Medal paid Dake $3,865.30 as consideration for the release called "C", and on November 14, 1939 the further sum of $3,000 as consideration for the further

release called "D", making a total of slightly more than $156,777.43.

That by reason of such payments and releases Gold Medal has paid in full for all milk purchased by it and has obtained binding releases from the only person, firm, or corporation having any claim against it.

It will be noted that nowhere in Saratoga's complaint does it refer at all to Dake as its agent or otherwise nor does it refer to the contract "A" or the modifying contract "B", and the complaint on its face is based on the sale of milk from Saratoga to Gold Medal.

. From Saratoga's complaint it would appear that the sale of milk which it claims to have made to Gold Medal was an entirely separate and distinct transaction from the milk purchased by Gold Medal from Dake under the two written contracts "A" and "B".

Upon the argument of the motion, however, the defendant Percy W. Dake makes affidavit that at the time of the negotiations of contract "A" with Gold Medal, he and Charles V. Dake were acting as agents for Saratoga and that it was then well known to the President of Gold Medal that the two Dakes were acting as agents of Saratoga; that as to all subsequent dealings between Gold Medal and the Dakes, the latter were at all times acting as agents for Saratoga.

Gold Medal sought examination of Saratoga and Dake, which resulted in a statement of admissions by Saratoga in lieu of such examination.

Saratoga contends that judgment cannot be taken against it on this motion or otherwise, because it claims that Dake was merely its agent in all of the transactions between Gold Medal and Dake and that it is entitled to trial in order that it may offer such proof.

■ The significance of the fact that the third party plaintiff here is the Saratoga Springs Cooperative instead of Dake will appear from the fact that if the contract was made between Gold Medal and Dake, it could not be invalid or illegal, even though less than the Order 27 price was agreed upon, and Dake would be bound by the releases unless they could be set aside on the ground of fraud, misrepresentation, coercion or other appropriate ground. The reason for this is that a broker or jobber in milk may buy milk from a handler of milk who is not a cooperative at any price the parties may agree upon and the purchaser of

milk from the handler is not in any wise subject to Order 27. This appears from Order 27 and is the plain inference from United States v. Rock Royal Co-op., D.C., 26 F.Supp. 534, reversed on other grounds in 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446.

■ But such jobber or broker in milk who buys from a cooperative must pay the cooperative in full for such milk at not less than the minimum price applicable thereto under the terms of Order 27. (Order 27, Article 4, Section 1.)

If, therefore, the broker or jobber of milk deals with a cooperative, he may not pay any price agreed upon irrespective of the order but must pay to the cooperative its minimum price. (Article 4, Section 1.)

For the purposes of this motion, Gold Medal's contention that it bought milk of Dake and not of Saratoga will be ignored, and it will be assumed that, in the contracts between Dake and Gold Medal for the sale of milk as aforesaid, Dake was at all times the agent of Saratoga; that Saratoga was at all times fully informed as to the acts of its agents Dake and that Gold Medal knew that Dake was the agent of Saratoga.

■ If two parties make a contract which is in violation of law, such contract is invalid and illegal. So, if Saratoga (a cooperative), through its agents Dake, made a contract for the sale of milk which was in violation of Order 27, such contract was invalid and illegal and no recovery could be had by Saratoga on such a contract. Mills v. McNamee, 194 App.Div. 932, 184 N.Y.S. 613; Stone v. Young, 210 App.Div. 303, 206 N.Y.S. 95; Hart v. City Theatres Co., 215 N.Y. 322, 325, 109 N.E. 497; Ridgely v. Keene et al., 134 App.Div. 647, 119 N.Y.S. 451; Adler v. Zimmerman, 233 N.Y. 431, 135 N.E. 840.

Contracts in violation of local code or ordinance are equally illegal with violations of statute. Miller v. Ammon, 145 U.S. 421, 426, 12 S.Ct. 884, 36 L.Ed. 759; Hart v. City Theatres Co., 215 N.Y. 322, 326, 109 N.E. 497.

■ Where the parties are in pari delicto neither party can recover. Schley v. Andrews, 225 N.Y. 110, 121 N.E. 812. Though recovery may sometimes be had while the contract is executory, if executed no recovery may be had. Kahn v. Rosenstiel, D.C., 298 F. 656; Panto v. Kentucky Distilleries Co., 215 App.Div. 511, 214 N.Y. S. 19.

If Gold Medal had full knowledge that Dake was at all times acting as agent for Saratoga, as Saratoga contends, and as is also assumed on this motion, that means that both Gold Medal and Saratoga knew that the contract price did not comply with the order and that the contract was illegal.

Neither party can recover against the other on an executed illegal contract.

Not only does Saratoga affirmatively contend that Dake was its agent in all dealings with Gold Medal, but in the list of admissions made by Saratoga it appears from No. 11 thereof that Saratoga had full knowledge of all the contracts made by its agent Dake with Gold Medal and especially of contract "B" of September 30, 1938, and of the two releases "C" of April 30, 1939 and "D" of Nov. 13, 1939.

Furthermore, in No. 12 of the Saratoga Cooperative's admission appears the following: "12. All matters of any and every nature, in any manner relating to the interests of Saratoga and its activities in the sale of milk, were conducted solely by Dake, at Dake's office, at Dake's expense and by Dake's employees, and this admission also relates to reports of every nature required by State and Federal authorities, or any duly constituted authority; and said admission also applies to the keeping of all Saratoga's books and records of any kind. Only occasionally would an officer of Saratoga sign some document, if requested so to do, after same was drawn by Dake."

Both by the assumption made herein and by the foregoing it clearly appears that Saratoga knew all about the modified contract of September 30, 1938 (B).

Parties are chargeable in law with knowledge of the terms of the contract which they sign. Not only are they so chargeable but Saratoga at least undoubtedly knew that the contract did not comply with Order 27 and was therefore invalid and illegal.

Therefore, in view of the law as above set forth, neither party to such an illegal contract can recover against the other, and Saratoga cannot recover anything against Gold Medal.

This brings us to the question of the two releases (C and D).

Saratoga asserts that the releases are invalid because the amount due was liquidated and there was no dispute between the parties as to the amount due and that the payment of the lesser sum, even though claimed to be made as full discharge, will not amount to an accord and satisfaction, citing Schnell v. Perlmon, 238 N.Y. 362, 367, 368, 144 N.E. 641, 34 A.L.R. 1023; Schuttinger v. Woodruff, 259 N.Y. 212, 216, 181 N.E. 361.

These two cases declare that where the amount of the claim is undisputed and the amount due thereon is admitted to be due, such claim cannot be discharged by any payment of a less amount than the amount due.

The rule as stated on page 367 of 238 N. Y., on page 642 of 144 N.E., 34 A.L.R. 1023 in a quotation from Jackson v. Volkening, 81 App.Div. 36, 43, 80 N.Y.S. 1102, affirmed 178 N.Y. 562, 70 N.E. 1101, is as follows:

"The rule * * * is well established, undoubtedly, that where a liquidated sum is due, the payment of part only, although accepted in satisfaction, is not, for want of consideration, a discharge of the entire indebtedness, but this rule is not looked upon with favor and is confined strictly to cases falling within it."

But the Schnell case also contains this quotation from Simons v. Supreme Council American Legion of Honor, 178 N.Y. 263, 265, 70 N.E. 776, where it was said the point was stated in these words: "Now it is the settled law of this state that if a debt or claim be disputed or contingent at the time of payment, the payment, when accepted, of a part of the whole debt, is a good satisfaction and it matters not that there was no solid foundation for the dispute."

Again the Schnell case cites from Nassoiy v. Tomlinson, 148 N.Y. 326, 42 N.E. 715, 51 Am.St.Rep. 695, where the Court uses these words: "A demand is not liquidated, even if it appears that something is due, unless it appears how much is due; and when it is admitted that one of two specific sums is due, but there is a genuine dispute as to which is the proper amount, the demand is regarded as unliquidated within the meaning of that term as applied to the subject of accord and satisfaction."

In both of these cases cited by Saratoga the Court found that there was dispute and that the amount paid was in full accord and satisfaction.

In the case at bar, that there was dispute between the parties as to the amount due is inescapable from the terms of the releases themselves.

The first release (C) reads as follows:

"An accounting was had this 20th day of April 1939, by and between P. W. and C. V. Dake (Herein called Dake) and Gold Medal Farms Inc. (herein called Gold Medal):

"Whereas Dake pursuant to contracts heretofore entered into with Gold Medal sold and delivered milk prior to date hereof to Gold Medal; and

"Whereas the parties this day met and settled all disputes of every nature relating to such transactions and to all other transactions of every nature heretofore had by and between the parties, and

"Whereas the parties had an account as the result of which it was agreed that Gold Medal should pay to Dake and that Dake should accept and receive from Gold Medal the sum of $3,865.30 in full of all claims of every nature.

"Therefore it is agreed and acknowledged as follows: Gold Medal paid to Dake the aforesaid sum of $3,865.30, which Dake accepted.

"The aforesaid payment constitutes a full and complete accord and satisfaction of claims of every nature which Dake has, had, or might have against Gold Medal Farms Inc., and such payment is accepted with such intentions and with such purpose.

"By reason of the settlement and accord and satisfaction, and the payment aforesaid, it is agreed that Gold Medal Farms Inc. has no claims of any nature against P. W. and C. V. Dake or either of them; and P. W. and C. V. Dake, jointly and severally hereby admit and acknowledge that they have no claims of any nature against Gold Medal Farms Inc. and accordingly the parties mutually release and discharge each other from all claims of every nature which either party, had, has, or might have, one against the other.

"In witness whereof the parties have hereunto set their hands and seals this day and year first above written.
　　　"P. W. and C. V. Dake, a copartnership,
　　　"By Percy W. Dake.
　"Gold Medal Farms Inc.
　　　"By Abraham Bagdan, Sec'y.".

This release was executed by the respective parties thereto and is a definite, specific and inescapable acknowledgment by Dake that there were disputes between the parties and that they have agreed upon the payment of such sums from Gold Medal to Dake in entire accord and satisfaction and release of all claims of Dake v. Gold Medal.

This is not a case where an undisputed sum was due and Gold Medal paid to Saratoga through Dake a less sum and claimed to be an accord and satisfaction.

Saratoga lays much stress on the fact that another release was executed on the 14th of November, 1939, between the parties hereto and argues therefrom that the release of the 20th of April, 1939 (C), was of no legal effect.

■ Parties to an agreed satisfaction and release may voluntarily reopen the matter and reconsider the dispute between them, though such accord, satisfaction and release could not be set aside by the Court except upon showing that it was obtained through fraud, misrepresentation, etc.

The fact is that Gold Medal did voluntarily reopen the accounting and between them they arrived at another accord, satisfaction and release, upon the payment of the further sum of $3,000.

In the release (D) of November 14th, signed by both parties thereto, appears the following:

"The said parties having come to the foregoing understanding and agreement, thereupon Gold Medal Farms, Inc. did execute and deliver to Dake its check in the sum of $3,000.00 to carry out the foregoing agreement; and Dake acknowledges receipt of said check. And Dake certifies and acknowledges that the foregoing payment constitutes in truth and in fact full payment of all moneys which Gold Medal Farms, Inc., is obligated to pay, and Dake also certifies that said settlement and payment is fair, just and equitable, and accordingly Dake estop themselves from at any time making any claim or raising any issues by reason of any dealings or transactions which they at any time had with Gold Medal Farms, Inc.

"By reason of the payment aforesaid Dake hereby releases and discharges Gold Medal Farms, Inc., * * *. And this release shall enure to the benefit of the successors and assigns of Gold Medal Farms, Inc., and all its officers, stockholders and directors and to the executors, administrators and assigns of Dake."

In this connection Gold Medal also cites Section 243 of the Debtor and Creditor Law of the State of New York, Consol.Laws, c. 12, adopted in 1936, which reads as follows, and which it claims to be controlling: "A written instrument, hereafter executed,

which purports to be a total or partial release of all claims, debts, demands or obligations, or a total or partial release of any particular claim, debt, demand or obligation, or a release or discharge in whole or in part of a mortgage, lien or charge upon personal or real property, shall not be invalid because of the absence of consideration or of a seal."

Manifestly there can be no question that there was dispute between the parties and they settled it by payment of certain sums of money, gave mutual releases, and Dake, if it were the principal, would be absolutely estopped from questioning these releases in any way whatever, and Saratoga, from whom Dake was acting merely as agent, having admittedly full knowledge of the acts of Dake as their agent and approved the same is likewise forever barred and estopped from claiming any moneys to be due from Gold Medal to Saratoga, and in this connection it makes no difference whether the contract out of which the claims arose was legal or illegal. Parties may pay what they owe under illegal contracts if they elect so to do and no one may question the same.

If these views are correct, it is not necessary to discuss any other questions raised.

Judgment may be entered dismissing the Saratoga complaint against Gold Medal, with costs.